KELLY, Judge.
In this appeal, John Richards challenges his conviction for attempted second-degree murder, arguing that he is entitled to a new trial. He contends that the standard jury instruction on attempted manslaughter,[1] which was read to the jury, was flawed and that its use amounted to fundamental error. While this case was pending on appeal, the Florida Supreme Court decided Williams v. State, 123 So.3d 23 (Fla.2013), and it held that the standard instruction was flawed.[2] It also found that in that case its use amounted to fundamental error. Thus, while Williams disposes of Mr. Richards’ contention that the attempted manslaughter instruction was flawed, we must still determine whether its use constitutes fundamental error in this case. Because we conclude it does not, we *961 affirm Mr. Richards’ conviction for attempted second-degree murder.
Mr. Richards was charged with attempted second-degree murder after he stabbed David Russell in the neck, apparently in an altercation over some beer. During his trial, Mr. Richards testified that both men were seated on a bench in the park, when Mr. Russell, not satisfied with the vodka that he had been sharing with friends, began to hound Mr. Richards for a beer, a request Mr. Richards repeatedly rejected, citing his lack of funds to buy more when his current supply was exhausted. Unable to take “no” for an answer, Mr. Russell helped himself to some of the beer Mr. Richards was drinking after Mr. Richards sat it down for a moment. Mr. Richards complained, and Mr. Russell responded with various threats and a punch to Mr. Richards’ face. Mr. Richards explained that he tried to stand up but Mr. Russell, who was now standing, “pushed me back down, slammed me on the bench and grabbed me by the throat.” Mr. Richards stated that he pulled out his knife in self-defense and that “after I stuck him, he stopped, well, squeezing my throat” and eventually he slumped down and Mr. Richards was able to get up.
An officer who interviewed Mr. Richards after the stabbing testified that Mr. Richards had told him that Mr. Russell had “bowed up” on him and he “wasn’t going to be disrespected” and that he “hoped he killed the dude, as he needed to make sure that other people understood that he wasn’t to be disrespected.” Other witnesses offered a different account. They said they saw Mr. Richards lean over and bite Mr. Russell and then start swinging the knife at Mr. Russell’s head and throat. One of the witnesses said he pried the knife from Mr. Richards’ hand while Mr. Russell held Mr. Richards’ wrist. Mr. Russell then punched Mr. Richards in the face before collapsing.
In closing, the State took the position that Mr. Richards’ version of events — that Mr. Russell attacked him over a beer when he had a full half-gallon of vodka he was sharing with friends — was not credible. Rather, the State argued, “this was not an act of self-defense,” it “was an act of rage.” Mr. Richards’ counsel, on the other hand, argued that Mr. Richards had acted in self-defense and that it was not credible that Mr. Richards would “just jump up and start stabbing somebody” without provocation. Mr. Richards’ counsel told the jurors they should read the instruction on justifiable use of deadly force, which was “basically the self-defense instruction” and that when they did, they would see “that this scenario is exactly this and that my client is not guilty because he acted in his own self-defense and it was justifiable use of that deadly force.” The State responded by explaining to the jurors that even if they thought Mr. Richards believed he could stab someone in self-defense because they “bowed up” on him, the instructions the court would read to them would show the law required more than that.
At this juncture we should explain that this was the second time Mr. Richards was on trial for stabbing Mr. Russell. He was originally charged with attempted first-degree murder but was convicted of attempted second-degree murder. That conviction was overturned on appeal because the jury received an incorrect instruction on justifiable use of deadly force, which had been Mr. Richards’ sole defense. Richards v. State, 39 So.3d 431, 434 (Fla. 2d DCA 2010). On remand, Mr. Richards was retried on a charge of attempted second-degree murder. Because in the original trial Mr. Richards had been charged with attempted first-degree murder, the jury had been instructed on attempted man *962 slaughter as a lesser included offense. However, whether to instruct on manslaughter became an issue in the second trial because the standard jury instructions did not include attempted manslaughter as a lesser included offense of attempted second-degree murder. See Fla. Std. Jury Instr. (Crim.) 6.4 (2006).[3]
As a result, when the trial court was ready to go over the jury instructions, the State commented that “we may need to do some editing there,” to which the court responded “and there was an attempted voluntary manslaughter instruction given in the last trial, and it also appeared on the verdict form.” The State responded that “here’s the issue for resolution of the Court. Attempted voluntary manslaughter does not appear as either a Categoiy 1 or Category 2 lesser included of 6.4, attempted second-degree homicide. However, it does appear as a — I believe, a Category 1 of second-degree homicide.” The court responded, “All right. I — this is the way I’ll handle it. If the Defense requests it, I’ll give it. If they don’t want it, I won’t give it.” Mr. Richards’ counsel replied, “We’re requesting it, Judge.” As a result of Mr. Richards’ request for the instruction, the attempted voluntary manslaughter instruction was read to the jury.
The court also discussed what needed to be done to the verdict form used in the first trial, noting that the attempted first-degree murder charge would be omitted from the verdict form. Because the charged crime was now attempted second-degree murder, the parties agreed that the lesser included offenses had to be reordered with aggravated battery as the next lesser offense, and then attempted manslaughter, followed by aggravated assault, and then battery. Assault was added as the final lesser offense.
The jury convicted Mr. Richards of attempted second-degree murder. In this appeal, Mr. Richards contends that the standard attempted manslaughter jury instruction that was read to the jury was flawed because it said the jury had to find the defendant committed an act that was intended to cause the death of Mr. Russell. He claims that the giving of the instruction was fundamental error and, therefore, that he is entitled to a new trial.
The supreme court has recently held that the standard attempted manslaughter instruction is flawed. See Williams, 123 So.3d at 30. That, however, does not resolve the question of whether the use of the instruction in Mr. Richards’ case requires a new trial. Mr. Richards did not object to the instruction; thus, he is only entitled to a new trial if use of the instruction in his case amounted to fundamental error, and, if it was fundamental error, he did not waive the error. We conclude that the error was not fundamen-
ATTEMPTED SECOND DEGREE MURDER — 782.04(2) and 777.04
CATEGORY ONE CATEGORY TWO FLA. STAT. INS. NO.
None
Aggravated assault 784.021 8.2
Aggravated battery 784.045 8.4
Assault 784.011 8.1
Battery 784.03 8.3 *963 tal but that even if it was, Mr. Richards waived it.
In Williams, the supreme court held that “a trial court commits fundamental error in giving the standard jury instruction on attempted manslaughter by act where the defendant is convicted of a crime no more than one step removed from the improperly instructed offense.” 123 So.3d at 27 (emphasis added). Here, Mr. Richards was convicted of attempted second-degree murder, a second-degree felony. See § 782.04(2), Fla. Stat. (2007) (classifying second-degree murder as a first-degree felony); 777.04(4)(c), Fla. Stat. (2007) (providing that an attempt to commit a crime that is a first-degree felony is classified as a second-degree felony). The jury was instructed, and the verdict form confirmed, that the next lesser offense was not attempted manslaughter — it was aggravated battery, which like attempted second-degree murder is a second-degree felony. See § 784.045, Fla. Stat. (2007). Attempted manslaughter, which is a third-degree felony, followed aggravated battery in the instructions and on the verdict form. See §§ 782.07(1) (defining manslaughter as a second-degree felony); 777.04(4)(d) (providing that an attempt to commit a crime that is a second-degree felony is classified as a third-degree felony). Thus, the jury here was properly instructed on the next lower crime. Because Mr. Richards was convicted of an offense not one but two steps removed from attempted manslaughter, the error was not fundamental.[4]
It was not fundamental for an additional reason. As explained in Daniels v. State, 121 So.3d 409, 418 (Fla.2013):
[A] defective instruction in a criminal case can only constitute fundamental error if the error pertains to a material element that is disputed at trial. Accordingly, where the trial court fails to correctly instruct on an element of the crime over which there is dispute, and that element is both pertinent and material to what the jury must consider in order to decide if the defendant is guilty of the crime charged or any of its lesser included offenses, fundamental error occurs.
Mr. Richards’ intent was not disputed at trial. Mr. Richards never claimed that he did not intend to kill Mr. Russell. Mr. Richards’ sole defense was that the stabbing was done in self-defense. So, in deciding whether to find Mr. Richards guilty of attempted second-degree murder or any of the lesser offenses, the only issue that was disputed that the jury had to consider was whether Mr. Richards’ actions were justified as self-defense. Cf id. (explain *964 ing that where the defendant was charged with first-degree premeditated murder and argued in closing that he did not intend to kill the victim but only to scare someone with the gun, while the State argued that he did intend to kill the victim, the defendant’s intent or lack of intent was clearly before the jury as a disputed issue).
Finally, even if the error had been fundamental, Mr. Richards waived the error because he affirmatively requested the jury instruction he now challenges. While affirmatively asking for a standard jury instruction would not normally amount to a waiver of fundamental error, in this case Mr. Richards asked that the jury be instructed on attempted manslaughter even though attempted manslaughter was not included as either a category one or two lesser offense of attempted second-degree murder. But for Mr. Richards’ affirmative request for the instruction, it would not have been given. The supreme court has held that fundamental error may be waived where defense counsel requests the erroneous instruction. Armstrong v. State, 579 So.2d 734, 735 (Fla.1991). Inclusion of the attempted manslaughter instruction was a tactical decision that gave the jury an option to convict Mr. Richards for an attempted homicide that was lesser in degree than both attempted second-degree murder and aggravated battery and which was consistent with the evidence presented at trial.[5] Where defense counsel makes a tactical decision to request an instruction, the defendant cannot benefit from that decision on appeal. See id.
Although Williams holds that the attempted manslaughter instruction was flawed, we conclude that its use does not constitute fundamental error in this case. Accordingly, we affirm Mr. Richards’ conviction for attempted second-degree murder.
LaROSE and BLACK, JJ., Concur.

. Florida Standard Jury Instruction (Criminal) 6.6, attempted manslaughter by act, as it existed in 2007 when the crime was committed, stated, in pertinent part:
To prove the crime of Attempted Voluntary Manslaughter, the State must prove the following element beyond a reasonable doubt: (Defendant) committed an act [or procured the commission of an act], which was intended to cause the death of (victim) and would have resulted in the death of (victim) except that someone prevented (defendant) from killing (victim) or [he] [she] failed to do so.

. In response to Williams, the instruction was amended to require proof that the defendant committed an intentional act, rather than proof that the defendant intended to cause death. See In re Standard Jury Instructions in Criminal Cases-Instruction 6.6, - So.3d -, 2013 WL 2349589, 38 Fla. L. Weekly S355 (Fla. May 30, 2013).

. The Schedule of Lesser Included Offenses in the Florida Standard Jury Instructions (Criminal) 6.4 (2006), appears as follows:

. There appears to be some confusion regarding the proper order in which to place attempted manslaughter and aggravated battery on a verdict form. See, e.g., Graham v. State, 100 So.3d 755 (Fla. 1st DCA 2012); Thomas v. State, 91 So.3d 880 (Fla. 5th DCA 2012). The record in this case reflects that the parties prepared the verdict form in the manner dictated by the supreme court in Sanders v. State, 944 So.2d 203, 207 (Fla.2006), which states,
While reclassification and enhancement statutes have made it difficult for trial courts to prepare appropriate verdict forms, the basic premise of what constitutes a proper lesser included offense has not changed. Trial courts should continue to rely primarily and ultimately upon the applicable statutory provisions for the charged crime when they are determining lesser included offenses. However, the Florida Standard Jury Instructions in Criminal Cases contain a schedule that assists in this task. The charged crime should be followed on the verdict form by the determined lesser included offenses in descending order by degree of offense.
At trial, the parties agreed on the order in which the lesser included offenses should be listed on the verdict form and no issue has been raised on appeal regarding the order of ■ offenses presented to the jury.

. Although intent was a nonissue in Mr. Richards' trial, the jury did hear testimony that Mr. Richards was heard saying he hoped he had killed Mr. Russell. Because this was the only evidence of Mr. Richards’ intent, and because he did not dispute it, the erroneous language in the attempted manslaughter instruction would have allowed the jury to find him guilty of the lesser offense of attempted manslaughter.