IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

CHARLIE WILLIAMS,

     Appellant,

v.

STATE OF FLORIDA,

     Appellee.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D13-4240

Opinion filed September 4, 2014.

An appeal from the Circuit Court for Leon County.
Dawn Caloca-Johnson, Judge.

John B. Kelly, III, Woodville, for Appellant.

Pamela Jo Bondi, Attorney General, and Heather Flanagan Ross, Assistant Attorney General, Tallahassee, for Appellee.

BENTON, J.

On direct appeal, Charlie Williams contends his convictions for tampering with a witness, in violation of section 914.22(1), Florida Statutes (2012), should be reversed because the instructions the jury were given constituted fundamental

error. He contends the jury instructions permitted—and, indeed, required—a guilty verdict even for lawful conduct. Persuaded, we reverse judgment and sentence alike and remand for a new trial.

On remand, Mr. Williams cannot, of course, be retried on the count on which he was acquitted, a charge of lewd or lascivious molestation of a victim twelve years of age or older, but less than sixteen years of age. The jury heard evidence that Mr. Williams consumed a certain amount of alcohol with his girlfriend at her home before she went to bed on July 2, 2012; that the girlfriend's fifteen-year-old daughter woke her later that night; and that the daughter accused Mr. Williams of trying to touch her inappropriately while exposing himself. But, because the jury found him not guilty of lewd and lascivious molestation, double jeopardy protections preclude retrial on that charge.

Based on letters written to his girlfriend while he was in jail awaiting trial on the lewd or lascivious molestation charge, Mr. Williams was charged with and found guilty at the same trial on three counts of tampering with a witness, in violation of section 914.22(1), which provides, in part:

> A person who knowingly uses intimidation or physical force, or threatens another person, or attempts to do so, or engages in misleading conduct toward another person, or offers pecuniary benefit or gain to another person, with intent to cause or induce any person to:
> (a) Withhold testimony, or withhold a record, document, or other object, from an official investigation or official proceeding;

2

. . . .
    (c) Evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official investigation or an official proceeding;

    (d) Be absent from an official proceeding to which such person has been summoned by legal process;

    . . . .; or

    (f) <u>Testify untruthfully in an official investigation or an official proceeding,</u>

<u>commits the crime of tampering with a witness</u>, victim, or informant.

(Emphasis supplied.)  At trial, Mr. Williams testified that his letters to his girlfriend[1] were requests that she tell the truth regarding what took place the night

---

[1] In the letters to his girlfriend, Mr. Williams wrote:

. . . Please help me get out of here so I can spoil you. My attorney is trying to settle this [an unrelated civil matter] by October 13 and need me at the settlement mediation.  Sweetheart we are going to be looking at a lot of cash.  You want (sic) have to worry about nothing anymore.  I'm going to do everything I told you I was going to do for you because I love you so much. . . . Baby the only thing you got to do is go to the Unemployment place write a notirized (sic) statement saying that Charlie Williams on the night of July 2, 2012 was outside from around 9:00 p.m. to the cops came and took him to jail trying to find a ride home to Quincy and that you knew that I was on the back porch because you didn't let me in the residents (sic), also you were up that night and witness everything baby that's the truth you want (sic) be lying. . . .  Baby with cases like this the child protect agent try to get involved or DCF don't let them scair (sic) you the only thing you got to do is tell them they got the wrong number and avoid them like the State attorney avoid them also.  I know you are not going

to help them persue (sic) something that didn't happen don't let them talk to nobody. . . . [The state attorney] can't charge you with nothing because you didn't write a sworn. . . . I didn't comitt (sic) this crime. I thought we had plans on buying two house[s]: one for you here in Tally and one for me in P.C. I'm going to look out for you Sweetheart. I want us to go on a shopping spree also the money is around the corner. I want to share it with the women I love. If you need help with school clothes I can get a loan from the Lawsuit Loan place like last time. Sweetheart 500,000 is my low estimate remember I have 2 lawsuits my lawyer is trying to settle both of them by next month. . . . I got to be out for settlement mediation. I'm going to put 30,000 in your bank account. . . . Tell [the victim] that I will get her a Apple cell phone, Ipad, as many clothes as she want and a car like Ted Bundy to drive to Rickard if ya'll get these white folks off me.

. . . .

[T]hese crackers ain't going to let me out until you go to the courthouse write a sworn or notirize (sic) letter stating that I was behind the residence trying to find a ride home to Quincy by calling someone on my cell phone. If not I was going to catch the bus when it started running at 6 am.    Also let them know that you locked me out of the residence and did not let me in non[e] that night. . . .  I got to get out of here for settlement mediation. I'm going to look out for you I promise. . . . I'm going to give you 30,000 I promise.

. . . .

. . . [T]he only thing I'm asking you to do is go to the courthouse and tell them white folks the truth. When the police arrested me on July 3, 2012 I told him the truth he asked me what was I doing behind the residence. I told him the truth that I was trying to call someone to take me home and that if I could not find a ride I was going to

4

of July 2, 2012; and that statements about purchasing houses or other gifts had only to do with plans he and his girlfriend had made, prior to his arrest, for spending proceeds he anticipated from lawsuits filed on his behalf.

In short, Mr. Williams defended the charges of tampering with a witness on grounds that he was attempting to influence his girlfriend and her daughter to testify truthfully. To attempt to persuade a witness to testify truthfully is not a crime.[2] The jury instructions given in the present case thus omitted an essential

---

catch the bus when it started running at 6 a.m. . . . [T]he only thing I'm asking you to do is go to the courthouse Monday and let them crackers know that I did nothing wrong. . . . [P]lease go up there and clear my name you was up that hole (sic) night and witness everything that took place. . . .

. . . .

. . . I went to the car lot and gave them 2,800 then sent 500 more on a money order. If you think thats something just wait until I get this money in October. You can start picking out our home. . . . [I]f I was out you would not have to worry about truck note, insurance so you could have all of your money for u. . . . Write a statement of what took place on the morning of July 3 because you didn't write a sworn statement tell them the truth bai that I was on the back porch trying to call a ride to get home and let the public defender know I didn't do anything to anyone bai also tell them you were up that hole nite (sic) and I didn't do anything

[2] Prior to 1991, subsection 914.22(1)(a), Florida Statutes, provided that it was unlawful for a person to offer pecuniary benefit or gain to "[i]nfluence the testimony of any person in an official investigation or official proceeding," and

and contested element of the offense—that any offer of pecuniary benefit or gain was made with intent to induce his girlfriend or her daughter to testify "<u>untruthfully</u>" in an official proceeding. The jury had to find this fact beyond a reasonable doubt in order to convict under section 914.22(1)(f). See <u>Blandon v.</u>

_____

subsection 914.22(3), Florida Statutes, provided that it was "an affirmative defense . . . that the conduct consisted solely of lawful conduct and that the defendant's sole intention was to encourage, induce, or cause the other person to testify truthfully." In <u>State v. Cohen</u>, 568 So. 2d 49, 52 (Fla. 1990), our supreme court determined that these portions of the statute were unconstitutional. The court noted the "statute criminalize[d] any attempt to 'influence' a potential witness and then require[d] the defendant to prove the 'influence' was not criminal. This is a catch-22." <u>Id.</u> The court also concluded subsection 914.22(1)(a) was "unconstitutionally vague because it fail[ed] to distinguish lawful from unlawful conduct in a way adequate to give notice as to the requirements of the law." <u>Id.</u> The court observed:

> [T]he language contained in subsection (3) at least <u>suggests</u> that the legislature, when it enacted subsection (1)(a), intended only to criminalize acts that encourage witnesses to testify <u>falsely</u>. This is because, on its face, subsection (3) attempts to establish an "affirmative defense" that the conduct in question was meant to induce truthful testimony from the witness. Yet simultaneously, subsection (3) is so inherently illogical and ineffectual as to cast serious doubt on this first-blush assumption. Thus, paragraph (a) of subsection (1) is facially vague. Here, we cannot determine whether the legislature in subsection (1), paragraph (a), intended to criminalize efforts to influence only untruthful, or both truthful and untruthful, testimony.

<u>Id.</u> In 1991, subsections 914.22(1)(a), and subsection 914.22(3), Florida Statutes, were repealed in response to <u>Cohen</u>. See Ch. 91-223, § 12, at 2167, Laws of Fla. In 1992, section 914.22(1)(f) was enacted in its present form, making it a crime to offer pecuniary benefit or gain to another person with intent to cause or induce any person to "[t]estify untruthfully in an official investigation or an official proceeding." See Ch. 92-281, § 1, at 2116, Laws of Fla.

6

<u>State</u>, 657 So. 2d 1198, 1199 (Fla. 5th DCA 1995) ("Jurors need to know what constitutes a criminal act so that they may differentiate between a criminal and noncriminal act.").

Subsequent to Mr. Williams' convictions, the Florida Supreme Court authorized for publication and use the current Florida Standard Jury Instruction (Criminal) 21.10, which provides in part:

> To prove the crime of Tampering with a [Witness] [Victim] [Informant], the State must prove the following three elements beyond a reasonable doubt:
> *Give as applicable.*
> 1. (Defendant) knowingly
> . . . .
> d. offered pecuniary benefit or gain to (name of person).
> 2. (Defendant) did so, with intent to cause or induce [any person] [(name of person)] to
> . . .
> f. testify untruthfully in an official investigation or an official proceeding.

See <u>In re Standard Jury Instructions in Criminal Cases—Report No. 2012-04</u>, 131 So. 3d 720, 743-44 (Fla. 2013). At the time of trial, there was no standard jury instruction for tampering with a witness.

Under the instructions given in the present case, the jury was required to find Mr. Williams guilty if they found he intended to influence his girlfriend or her daughter to testify in any manner, even truthfully. Although the state presented evidence on which the jury could have found Mr. Williams guilty, if instructed correctly, evidence also supports a finding that Mr. Williams did not intend to

7

influence a witness to testify untruthfully. "It is up to the jury to hear the evidence, find the facts, and apply the law to reach a proper and fair verdict. That process was short-circuited in this case by the faulty instruction." Haygood v. State, 109 So. 3d 735, 743 (Fla. 2013).

Based on the failure to instruct the jury that the state had the burden to prove that he acted with the purpose of influencing his girlfriend or her daughter to testify "untruthfully," § 914.22(1)(f), Florida Statutes (2012), Mr. Williams now argues he is entitled to a new trial with complete instructions. The jury was told:

> To prove the crime of Tampering with a Witness, the State must prove the following two elements beyond a reasonable doubt:
> 1.   Charlie Williams knew that a criminal trial or proceeding of this state was pending.
> 2.   Charlie Williams used intimidation, or attempted thereto, or engaged in misleading conduct toward [the girlfriend or her daughter], or offered pecuniary benefit or gain to [the girlfriend or her daughter] <u>with the purpose to influence that person's testimony</u> or to cause or induce that person to withhold testimony from an official proceeding or to cause that person to fail to appear at an official proceeding.

(Emphasis supplied.) Because the issue he raises on appeal was not preserved by a contemporaneous objection below, Mr. Williams must not only demonstrate that error occurred, but also show that the asserted error is fundamental. See Smith v. State, 76 So. 3d 379, 383 (Fla. 1st DCA 2011).

In closing argument, defense counsel argued that all Mr. Williams asked his girlfriend to do was to tell the truth, saying: "That's not tampering with a witness. That's not enticing somebody to lie. That's not threatening anybody." But defense counsel did not explicitly request that the trial court instruct the jury that the prosecution had to prove Mr. Williams sought to influence a witness or witnesses to testify untruthfully, nor did defense counsel object on any other basis to the jury instructions the trial court gave before the verdict was returned.[3]

Whether an error is fundamental is a question of law. "This Court reviews the issue of unpreserved fundamental error under the de novo standard." Elliot v. State, 49 So. 3d 269, 270 (Fla. 1st DCA 2010). "[W]here the trial court fails to correctly instruct on an element of the crime over which there is dispute, and that element is both pertinent and material to what the jury must consider in order to decide if the defendant is guilty of the crime charged or any of its lesser included offenses, fundamental error occurs." Daniels v. State, 121 So. 3d 409, 418 (Fla. 2013). See also Bolin v. State, 8 So. 3d 428, 431 (Fla. 2d DCA 2009)

---

[3] The jury verdict was rendered May 21, 2013. On June 25, 2013, defense counsel filed a motion for judgment of acquittal/new trial and argued the jury instructions misstated the law and constituted fundamental error based on the failure to instruct the jury that the state was required to prove that he acted with the purpose to influence a person to testify "untruthfully." The trial court determined the amended information charged violations of subsections 914.22(1)(a), (c), or (d), but did not charge a violation of subsection 914.22(1)(f), and that it was unnecessary for the instructions to include the word "untruthfully." On this basis, the motion was denied.

("Fundamental error occurs when a jury instruction contains an incorrect definition of a disputed element of a crime."); Allen v. State, 939 So. 2d 273, 276 (Fla. 4th DCA 2006) ("Florida courts have found fundamental error where the trial court incorrectly instructed the jury on an element of a crime or a defense that was in dispute.").

The erroneous jury instructions in the present case constituted fundamental error because the instructions "prevented the jury from being able to choose the true verdict in this case—a verdict based on the jury's application of its fair assessment of the facts concerning [Mr. Williams'] intent to the proper elements of the offense as set forth in the . . . statute." Haygood, 109 So. 3d at 743. "On the evidence adduced below in the present case, it is entirely possible 'that a verdict of guilty could not have been obtained without the assistance of the error alleged.'" Alexander v. State, 121 So. 3d 1185, 1189 (Fla. 1st DCA 2013) (citation omitted).

We reject the state's argument that defense counsel affirmatively waived the issue based on what transpired at the charge conference.[4] While "fundamental

---

[4] The following exchange occurred during the charge conference:

COURT: Okay. Have a seat. We got a copy for everybody. If y'all would just look at those and make sure I did not miss any corrections. And when y'all have had a chance to review those, if you will just let me know.
STATE: It looks good, Your Honor.
COURT: And, Ms. Bates, have you had an opportunity to review the instructions?

10

error may be waived where defense counsel requests an erroneous instruction," Armstrong v. State, 579 So. 2d 734, 735 (Fla. 1991), defense counsel did not request the defective instruction here. See also Van Loan v. State, 736 So. 2d 803, 804 (Fla. 2d DCA 1999) (noting an exception to the fundamental error rule arises when defense counsel affirmatively agrees to the omission or the alteration of a jury instruction, but that before the exception applies "defense counsel must be aware of the omission, alteration, or incomplete instruction and affirmatively agree to it"). "It is well-established that "'where the trial judge has extended counsel an opportunity to cure any error, and counsel fails to take advantage of the opportunity, such error, if any, was invited and will not warrant reversal.'"" Moore v. State, 114 So. 3d 486, 489 (Fla. 1st DCA 2013) (quoting Ray v. State, 403 So. 2d 956, 960 (Fla. 1981)). But the defense did not invite the error in the present case.

The record in the present case reflects nothing more than unknowing acquiescence. See Roberts v. State, 694 So. 2d 825, 826 (Fla. 2d DCA 1997) ("Since defense counsel did not affirmatively agree to the omission [of the definitions of justifiable and excusable homicide when instructing on attempted manslaughter], but only acquiesced in the instructions as given, the [Armstrong]

DEFENSE COUNSEL:  Yes, Ma'am.
COURT:  Are they okay with you?
DEFENSE COUNSEL:  Yes, ma'am.

11

exception does not apply."). Compare Armstrong, 579 So. 2d at 735 ("By affirmatively requesting the instruction he now challenges, Armstrong has waived any claim of error in the instruction."); Richards v. State, 128 So. 3d 959, 964 (Fla. 2d DCA 2013) ("Mr. Richards waived the error because he affirmatively requested the jury instruction he now challenges."); Smith v. State, 76 So. 3d 1056, 1058 (Fla. 4th DCA 2011) ("The specific issue of whether 'and/or' was appropriate was extensively discussed between the court and the attorneys, and Smith asked for the instruction that he now claims negated his entire defense . . . . Where the defendant asks for the instruction that he claims on appeal was erroneous, he cannot raise its error on appeal."); Caldwell v. State, 920 So. 2d 727, 733 (Fla. 5th DCA 2006) ("Caldwell's counsel specifically requested that the definition of 'concealed weapon' . . . not be given regarding the instruction for carrying a concealed weapon during the commission of a felony. Because of this request, we believe it incongruous for Caldwell to now complain about an error he caused to occur.").

In the present case, the record is devoid of any discussion of whether "untruthfully" should have been omitted from the jury instructions. Nothing supports the view that defense counsel affirmatively agreed to the omission, knowing that the instructions were incomplete. See, e.g., Daniels v. State, 72 So. 3d 227, 229 (Fla. 2d DCA 2011), quashed on other grounds, 121 So. 3d 409 (Fla.

12

2013) (concluding defense counsel's acquiescence, silence, or argument in favor of the standard instruction on manslaughter did not constitute waiver or invited error); Paul v. State, 63 So. 3d 828, 829 (Fla. 5th DCA 2011), quashed on other grounds, 137 So. 3d 1021 (Fla. 2014) (concluding defense counsel's statements and failure to object did not waive fundamental error in jury instructions); Beckham v. State, 884 So. 2d 969, 973 (Fla. 1st DCA 2004) (rejecting argument that claim of fundamental error based on failure to instruct the jury on justifiable and excusable homicide as part of the definition of manslaughter was waived where defense counsel informed the trial court that the prosecution and the defense had reviewed the proposed (incomplete) instructions and agreed to them, because the "record does not show that defense counsel was aware of the incomplete instruction and affirmatively agreed to it"); Van Loan, 736 So. 2d at 804 (concluding defense counsel did not waive fundamental error in jury instructions when there was "no indication that Van Loan's trial counsel knew that the omission was error and agreed to the omission"); Ortiz v. State, 682 So. 2d 217, 218 (Fla. 5th DCA 1996) (rejecting argument that the defense waived the failure to instruct on justifiable homicide by stating to the court: "Judge, we have looked over [the charges], and we don't have any objection to any of the instructions," because "there was no express waiver" of the omission).

13

Fundamental error cannot be harmless error. See <u>Daniels</u>, 121 So. 3d at 418; <u>Haygood</u>, 109 So. 3d at 740. If a jury instruction defines a disputed element in a materially inaccurate way, "'whether the evidence of guilt is overwhelming or whether the prosecutor has or has not made an inaccurate instruction a feature of the prosecution's argument are not germane to whether the error is fundamental.'" <u>Haygood</u>, 109 So. 3d at 741 (quoting <u>Reed v. State</u>, 837 So. 2d 366, 369 (Fla. 2002)). The cases make clear that appellant's judgment and sentence must be reversed, and the matter be remanded for a new trial. "Inherent in a fair trial is the right to have the court 'correctly and intelligently instruct the jury on the essential and material elements of the crime charged and required to be proven by competent evidence.'" <u>Smith</u>, 76 So. 3d at 385 (quoting <u>Gerds v. State</u>, 64 So. 2d 915, 916 (Fla. 1953)).

Reversed and remanded.

CLARK and OSTERHAUS, JJ., CONCUR.