# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D14-2382

_____

ARNOLD JEROME KNIGHT,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____

On appeal from the Circuit Court for Okaloosa County.
John T. Brown, Judge.

February 19, 2018

## ON MOTION FOR REHEARING, CERTIFICATION OF QUESTION, AND REHEARING EN BANC

KELSEY, J.

The Court previously issued its opinion affirming Appellant's conviction and sentence for attempted second-degree murder. *Knight v. State*, 41 Fla. L. Weekly D1760, 2016 WL 4036091 (Fla. 1st DCA July 28, 2016). Appellant moved for rehearing, certification of a question of great public importance, and rehearing en banc.[1] We deny Appellant's motion, withdraw our

---

[1] On the Court's own motion, we requested supplemental briefing on the "one step removed" analysis of *Daughtery v. State,* 211 So. 3d 29 (Fla. 2017). While we appreciate both parties'

prior opinion, and in its place substitute the following opinion affirming Appellant's conviction and sentence on two alternative grounds. We certify conflict with *Caruthers v. State*, 232 So. 3d 441 (Fla. 4th DCA 2017). We also re-certify as a question of great public importance a question we certified in *Moore v. State*, 114 So. 3d 486, 489 (Fla. 1st DCA 2013), *review dismissed*, 181 So. 3d 1186, 1186-87 (Fla. 2016).

* * *

Appellant challenges his conviction and thirty-year sentence for attempted second-degree murder of his former girlfriend.[2] The

---

submissions on that issue, we conclude that it would not be determinative.

[2] The crime charged was attempted first-degree premeditated murder. Appellant also was convicted of violating a domestic violence injunction, but did not challenge that conviction or sentence on appeal. These acts occurred while Appellant was on probation for federal crimes. In the violation of probation hearing in federal court, he admitted to new law violations including those for which he had just been convicted in Florida. *United States v. Knight,* 604 F. App'x 886, 887, 889 (2015) (noting that Appellant "waived his right to an initial revocation hearing and admitted the violations as charged in the amended petition;" and observing "Knight admitted using cocaine on multiple occasions and committing two crimes, including attempting to murder his former girlfriend with a steel pipe."); Report & Recommendation, *Knight v. United States*, Nos. 15-00528-CG-M, 07-00242-CG-M, 2016 WL 1096972, at *2 (S.D. Ala. Feb. 24, 2016) (quoting Appellant's written pleading stating that "I hereby voluntarily waive my statutory right to such a hearing and admit to the violations set forth in the Petition [including the Florida convictions]."). The parties stipulated prior to the state trial that the federal charges and proceedings would not be presented to the jury. Appellant's admission to the Florida and other charges occurred after the notice of appeal was filed in this case.

2

evidence supported the conclusion that he used a heavy, metal hydraulic jack handle to beat the victim very severely in her face and head, breaking the arm she used to try to block the attack, and breaking one of her eye sockets, in addition to inflicting other serious injuries to her face and head, including a gash down to her skull, leaving her with permanent residual impairments. The emergency medicine physician who treated the victim testified that the injuries required a direct blow of great force.

The victim testified that Appellant had lived with her and her two young-adult children for a short time and had previously threatened to kill her if she ever tried to leave him. After Appellant moved out of the victim's house at the request of the victim and her son, the victim obtained an injunction for protection against domestic violence against Appellant. Nine hours after he was served with that injunction, at a time when he was aware from having lived with the victim that she would be leaving her house alone to prepare to leave in her car, Appellant was waiting for her and attacked her. The victim saw him begin beating her with the weapon, although the severity of the beating prevented her from remembering the remainder of the attack. The victim's son heard her call out, and was an eyewitness to part of the attack. He saw Appellant with the weapon in his hand and confronted him. The victim's daughter saw Appellant walking away from the attack carrying an object matching the description of the weapon.

The weapon was found a short distance away, between the victim's house and the place where law enforcement found Appellant. The weapon was found to have the victim's DNA on both ends and Appellant's DNA on one end. Although the weapon was the handle to a hydraulic jack, no such jack was found anywhere near the victim's house or surrounding area, supporting the conclusion that Appellant had brought it with him. The presence of the weapon, together with the evidence of Appellant's having been served with the domestic violence injunction just hours earlier, his timed arrival at the victim's house, and his lying in wait for her, also supported the conclusion that Appellant had planned the attack in advance.

3

Appellant did not testify at his trial, but neither the fact of the attack nor Appellant's identity as the attacker was disputed. There was evidence that upon being informed of the charges including use of a crowbar as a weapon, Appellant spontaneously denied having used a weapon; but there was no evidence explaining how the victim's serious injuries including a deep gash down to her skull could have been inflicted with bare hands. Defense counsel argued to the jury that the attack was not premeditated, Appellant had no intent to kill the victim, and the evidence was insufficient to establish that Appellant had used the jack handle as his weapon for the attack.

The jury was instructed on the following offenses in the following order:

- attempted first-degree premeditated murder with a weapon (the charged offense);

- attempted first-degree premeditated murder;

- attempted second-degree murder with a weapon (the offense of conviction);

- attempted second-degree murder;

- attempted voluntary manslaughter with a weapon (the erroneous instruction);

- attempted voluntary manslaughter;

- aggravated battery with a deadly weapon or great bodily harm;

- felony battery with great bodily harm; and

- battery.

4

Appellant argues that the trial court committed fundamental error by using a jury instruction on the lesser-included crime of attempted voluntary manslaughter by act that the Florida Supreme Court had invalidated several years earlier for incorrectly including an element of intent to kill. *State v. Montgomery*, 39 So. 3d 252, 259-60 (Fla. 2010). The erroneous jury instruction for attempted voluntary manslaughter provided as follows, with the erroneous language italicized:

> To prove the crime of Attempted Voluntary Manslaughter, the State must prove the following element beyond a reasonable doubt:

> ARNOLD JEROME KNIGHT committed an act or procured the commission of an act*, which was intended to cause the death of [VICTIM]* and would have resulted in the death of [VICTIM] except that someone prevented ARNOLD JEROME KNIGHT from killing [VICTIM] or he failed to do so.

> However, the defendant cannot be guilty of Attempted Voluntary Manslaughter if the attempted killing was either excusable or justifiable as I have previously explained those terms.

> It is not an attempt to commit manslaughter if the defendant abandoned the attempt to commit the offense or otherwise prevented its commission under circumstances indicating a complete and voluntary renunciation of his criminal purpose.

> To "procure" means to persuade, induce, prevail upon, or cause a person to do something.

> In order to convict of Attempted Voluntary Manslaughter it is not necessary for the State to prove that the defendant had a premeditated intent to cause death.

5

The Florida Supreme Court held in *Montgomery* that this standard instruction was erroneous for including the element of intent to kill; and further held that the last line of the instruction, stating it is not necessary to prove premeditated intent to kill, was insufficient to cure the error. 39 So. 3d at 257–58. By the time the *Montgomery* opinion was rendered, the supreme court had approved a corrected jury instruction on manslaughter by act, which added that "it is not necessary for the State to prove that the defendant had a premeditated intent to cause death, *only an intent to commit an act which caused death*." *Id.* at 257 (quoting *In re Standard Jury Instructions in Criminal Cases–Report No. 2007-10,* 997 So. 2d 403, 403 (Fla. 2008)).

The Florida Supreme Court further held in *Montgomery* that—*because of* the jury pardon doctrine—the use of an incorrect manslaughter by act instruction is fundamental error, and "per se reversible,"[3] if the defendant is convicted of second-degree murder (and by extension, attempted second-degree murder), a crime only one step above manslaughter. *Id.* at 259–60 ("A jury must be given a fair opportunity to exercise its inherent 'pardon' power by returning a verdict of guilty as to the next lower crime. If the jury is not properly instructed on the next lower crime, then it is impossible to determine whether, having been properly instructed, it would have found the defendant guilty of the next lesser offense.") (quoting *Pena v. State*, 901 So. 2d 781, 787 (Fla. 2005)).

In part I of this opinion we find that the Florida Supreme Court recently receded from the jury pardon doctrine. *Dean v. State*, 230 So. 3d 420, 425 (Fla. 2017).[4] That change in the law

---

[3] Fundamental error need not be preserved and is not subject to harmless error analysis, so is "per se reversible." However, not all per se reversible error is fundamental. Non-fundamental per se reversible error must be preserved and analyzed for harmless error. *See Johnson v. State*, 53 So. 3d 1003, 1007 n.5 (Fla. 2010).

[4] We also requested supplemental briefing on *Dean*, and thank the parties for their analysis.

6

eliminates the rationale for the fundamental error analysis of *Montgomery*. We therefore conclude in part I of this opinion that the use of an erroneous manslaughter instruction does not constitute reversible error on the facts presented. We certify conflict with *Caruthers*, which held that the Florida Supreme Court did not recede from the jury pardon doctrine in *Dean*.

In part II of this opinion, we adhere to our previous holding that this error can be waived and was waived on the specific facts presented. We thus affirm Appellant's conviction and sentence on this alternative ground. We re-certify as a question of great public importance a question we certified in *Moore*, 114 So. 3d at 493, *review dismissed*, 181 So. 3d at 1186-87.

## I.   ABROGATION OF THE JURY PARDON DOCTRINE.

In *Dean*, the defendant was charged with second-degree felony murder and requested that the jury be instructed on manslaughter as a lesser-included offense. 230 So. 3d at 421–22. The trial court agreed with the state that manslaughter was not a lesser-included offense of second-degree felony murder, and decided not to instruct the jury on manslaughter. *Id.* The Fourth District held that manslaughter is not a necessary lesser-included offense of second-degree felony murder, but certified the question to the Florida Supreme Court. *Id.* at 422. The supreme court declared in its per curiam opinion that manslaughter *was* a necessary lesser-included offense of second-degree felony murder. *Id.* at 422–24. Not giving the manslaughter instruction would have constituted fundamental error, *see Montgomery*, 39 So. 3d at 258; which is not subject to harmless error analysis, *Reed v. State*, 837 So. 2d 366, 369-70 (Fla. 2002).

*Dean* generated four opinions. Justices Lewis, Canady, and Lawson joined the per curiam opinion affirming Dean's conviction. The per curiam opinion expressly incorporated by reference the reasons set forth in Justice Polston's concurring opinion, joined by Justices Canady and Lawson, which receded

7

from the jury pardon doctrine.[5] Thus, a majority consisting of four justices—Justices Lewis, Canady, Polston, and Lawson—concurred in the abrogation of the jury pardon doctrine. Both Justices Pariente and Quince recognized in their respective separate opinions that the majority of the court had abrogated the jury pardon doctrine.[6] The petitioner in *Dean* moved for rehearing, arguing that the court should not have abrogated the jury pardon doctrine without at least allowing supplemental briefing on the issue. The State argued in its response that the court properly applied a harmless error analysis.[7] The court denied rehearing and issued mandate. We thus must conclude that the Florida Supreme Court has abrogated the jury pardon doctrine. We recognize that the Fourth District in *Caruthers* concluded to the contrary, and we certify conflict with *Caruthers*.

The supreme court majority's grounds for abrogating the jury pardon doctrine are ably set out in Justice Polston's concurring opinion in *Dean*. 230 So. 3d at 425–26 (Polston, J., concurring). We will not repeat the court's reasoning here. *See also, e.g., Haygood v. State*, 109 So. 3d 735, 749 (Fla. 2013) (Canady, J., dissenting) ("Nothing in the Florida Constitution, the Florida Statutes, or the Florida Rules of Criminal Procedure supports our recognition of such a right of access to a partial jury nullification."); *Sanders v. State*, 946 So. 2d 953, 958 (Fla. 2006) (recognizing that a jury pardon is "essentially 'a not guilty verdict rendered contrary to the law and evidence' and is an

---

[5] The per curiam opinion also adopted the reasoning of Justice Quince's opinion, the only part of which can be harmonized with the per curiam opinion is her noting that the court had receded from the jury pardon doctrine.

[6] In the reported decision, Justice Labarga is identified as the judge who presided over the trial below. He was recused from the supreme court proceedings.

[7] Petitioner's Motion for Rehearing at 3-4, and Respondent State's Response to Motion for Rehearing at 1-2, *Dean*, 230 So. 3d 420 (No. SC16-1314).

aberration."). *Dean* applies to this case. *See Smith v. State*, 598 So. 2d 1063, 1066 (Fla. 1992) ("Thus, we hold that any decision of this Court announcing a new rule of law, or merely applying an established rule of law to a new or different factual situation, must be given retrospective application by the courts of this state in every case pending on direct review or not yet final.").

Because the error here was not preserved, we could affirm without further discussion. However, the *Dean* court applied a harmless error analysis, agreeing with Justice Polston's observation that even the failure to give a requested instruction on a necessarily lesser-included offense is harmless "because the defendant is not entitled to an opportunity for a jury pardon." *Dean*, 230 So. 3d at 426. Applying the same reasoning, the giving of the instruction for attempted manslaughter by act deemed erroneous under *Montgomery* is harmless error. The evidence adduced below strongly supports that conclusion.

The jurors here were correctly instructed that "If you return a verdict of guilty, it should be for the highest offense which has been proven beyond a reasonable doubt." Fla. Std. Jury Instr. (Crim.) 3.12. The jurors were correctly instructed that attempted second-degree murder involved intentional commitment "of an act which would have resulted in the death of [victim]." The instruction for attempted second-degree murder also correctly noted that "it is not necessary for the State to prove the defendant had an intent to cause death."

Appellant's counsel did not challenge identity or the fact of the attack, but argued lack of intent to kill, lack of premeditation, and no use of a weapon. The jury received evidence that could support a finding of intent to kill in the victim's testimony that Appellant had previously threatened to kill her if she left him, and in the brutality of Appellant's attack. The jury received evidence of premeditation in the timing of the attack as a response to the domestic violence injunction, in Appellant's traveling to the victim's house in spite of the injunction and timing his arrival to coincide with a part of her known routine that left her alone and vulnerable, and in his bringing a jack

9

handle with him for the attack. The jury received evidence that the jack handle bore the DNA of both Appellant and his victim, improbable beyond staggering odds unless Appellant had, in fact, beaten the victim with the jack handle. Appellant's counsel nevertheless succeeded in persuading the jury not to return a verdict for the crime charged, attempted first-degree premeditated murder. Appellant has already avoided a life sentence by the jury's finding of guilt as to attempted second-degree murder with a weapon, without intent to kill. The evidence very strongly supports the offense of conviction. We affirm Appellant's conviction and sentence.

## II. WAIVER.

As noted above, even if the Florida Supreme Court had not abrogated the jury pardon doctrine, we would adhere to our original holding that the giving of the jury instruction held to be erroneous in *Montgomery* is an error that can be waived, and that it was waived on the specific facts presented here. We emphasize that our waiver analysis is limited to the specific factors at play here. These factors include the legal anomaly that results when counsel's failure to object to a fundamentally erroneous jury instruction has the legal effect of benefiting the defendant; the fact that this jury instruction had been declared erroneous and replaced with a valid instruction several years before this trial; and the fact that experienced counsel represented to the court that he had read and had no objections to the jury instructions, and was actively involved in reviewing and revising the jury instructions as a whole.

### A. *The Error: Intent To Kill Is Not An Element Of Manslaughter.*

The erroneous jury instruction used in this case had been invalidated several years before this trial occurred; and while we do not hold that the passage of time alone can create a waiver of objection to an erroneous instruction, we find that it is one among several factors that are appropriately considered. The Florida Supreme Court held in 2010—nearly four years before the trial in

this case—that the standard jury instruction then in effect for voluntary manslaughter by act erroneously included an element of intent to kill, by instructing that the defendant must have committed an act or procured the commission of an act that was "intended to cause the death" of the victim. *Montgomery*, 39 So. 3d at 259-60 (approving this Court's 2009 decision reaching the same conclusion, *Montgomery v. State*, 70 So. 3d 603 (Fla. 1st DCA 2009)). After *Montgomery*, the supreme court issued a new interim manslaughter instruction that eliminated the erroneous reference to an intent to kill, instead stating that the jury must find the defendant "intentionally committed an act or acts that caused the death of" the victim. *In re Amendments to Standard Jury Instructions in Criminal Cases--Instruction 7.7*, 41 So. 3d 853, 854-55 (Fla. 2010).[8]

Although *Montgomery* involved *completed* rather than *attempted* voluntary manslaughter by act, the correct instruction for the attempted crime obviously also would not include intent to kill because the distinction between completed and attempted manslaughter is not a difference in the elements of manslaughter but only a difference in whether the crime was prevented or otherwise failed to reach completion. *See* § 777.04(1), Fla. Stat. (2014) ("A person who attempts to commit an offense prohibited by law and in such attempt does any act toward the commission of such offense, but fails in the perpetration or is intercepted or prevented in the execution thereof, commits the offense of criminal attempt . . . ."). Thus, the proper instruction for *attempted* voluntary manslaughter by act was settled in *Montgomery* as well, by this Court in 2009, and affirmed by the Florida Supreme Court in 2010. *Montgomery*, 70 So. 3d at 607, *aff'd*, 39 So. 3d at 259-60.

---

[8] The supreme court issued an amended manslaughter instruction in 2011 clarifying that it requires an intentional act not constituting negligence, but that amendment to the instruction is not at issue here. *In re Amendments to Standard Jury Instructions in Criminal Cases--Instruction 7.7*, 75 So. 3d 210, 211 (Fla. 2011).

Even if there had been any doubt about the correct instruction for *attempted* voluntary manslaughter by act, we had made it clear by 2009 in *Lamb v. State*, 18 So. 3d 734 (Fla. 1st DCA 2009). In *Lamb*, we held that an instruction including intent to kill was erroneous also as to *attempted* manslaughter by act. 18 So. 3d at 735. On review of our decision in *Lamb* based on conflict with a decision of the Fourth District Court of Appeal, the Florida Supreme Court approved *Lamb* and held that it was fundamental error to instruct a jury that *attempted* manslaughter by act requires intent to kill. *Williams v. State,* 123 So. 3d 23, 30 (Fla. 2013).

In spite of these developments in the law that occurred as many as five years before the trial below, the manslaughter jury instruction used here retained the incorrect element of intent to kill. It was virtually identical to that disapproved in *Williams*, which stated "[Defendant] 'committed an act which was *intended to cause the death' of* [Victim]." 123 So. 3d at 25 (emphasis added) (quoting *Lamb*, 18 So. 3d at 735). The jury instruction here also was substantively the same as that disapproved in *Montgomery*, which included the element that "(Defendant) intentionally caused the death of (victim)." *Montgomery*, 39 So. 3d at 256. This jury instruction clearly was erroneous. The giving of this erroneous jury instruction constituted fundamental error under prior supreme court precedent. *Williams*, 123 So. 3d at 25, 27; *Montgomery*, 39 So. 3d at 258.

## B.  *The Fundamental Error Was Waived.*

Fundamental error in a jury instruction can be waived. The Florida Supreme Court has held that "objecting to erroneous instructions is the responsibility of a defendant's attorney, and the attorney's failure to object to such instructions can properly constitute a waiver of any defects." *Ray v. State*, 403 So. 2d 956, 961 (Fla. 1981). *See also*, *e.g.*, *Moore*, 114 So. 3d at 489, *review dismissed*, 181 So. 3d at 1186-87 (finding waiver as to erroneous manslaughter instruction where defense counsel affirmatively agreed to it in spite of having been expressly advised of the *Montgomery* decision). It is axiomatic that waiver "is the

12

voluntary and intentional relinquishment of a known right, or conduct which implies the voluntary and intentional relinquishment of a known right." *Major League Baseball v. Morsani*, 790 So. 2d 1071, 1077 n.12 (Fla. 2001). The existence of a waiver in a given context is a question of fact. *Hill v. Ray Carter Auto Sales, Inc.*, 745 So. 2d 1136, 1138 (Fla. 1st DCA 1999).

In *Moore*, we certified a question of great public importance as to what facts will constitute a waiver of an erroneous jury instruction, but the supreme court declined to review our decision. *Moore*, 181 So. 3d at 1186-87. We must, therefore, continue to resolve the question of waiver on a case-by-case basis in light of the specific facts and the totality of circumstances of each case. These circumstances here include (1) the existence of a plausible tactical reason for allowing the erroneous instruction to go to the jury; (2) the long time that had passed since the jury instruction had been invalidated; and (3) defense counsel's conduct including his express representation that he had read the jury instructions and had no objections to them; and his substantial involvement in formulating, revising, and approving the jury instructions as a whole after discussion before trial, before closing arguments, and after closing arguments. We hold that on the totality of circumstances presented here, the error in the manslaughter jury instruction was waived.

### (1) The Law Will Not Incentivize Error.

Very significant to our analysis is the existence of a plausible strategic reason for allowing the erroneous instruction to go to the jury. Our extension of *Moore* to find a waiver on these facts and circumstances is informed in significant part by the importance of avoiding situations that incentivize defense counsel to commit error. We have observed that asserting the fundamental error argument against an unobjected-to jury instruction creates a "bizarre incentive" for defense counsel to allow erroneous instructions to go to the jury:

To reverse under these facts would guarantee a defendant a new trial anytime there was any error in an instruction. The consequence of such a rule would essentially obligate a defense attorney to stand mute and, if necessary, agree to an erroneous instruction . . . . In fact, under such precedent, an attorney who brings a faulty jury instruction to the court's attention or refuses to agree to an instruction that misstates the law would sacrifice his client's opportunity for a second trial and would risk being found incompetent as a consequence.

*Calloway v. State*, 37 So. 3d 891, 896-97 (Fla. 1st DCA), *review denied*, 51 So. 3d 1154 (Fla. 2010); *see also Joyner v. State*, 41 So. 3d 306, 307 (Fla. 1st DCA 2010) ("Encouraging counsel to invite such error subverts the trial process and is counter to the interests of justice."); *Facin v. State*, 188 So. 3d 859, 862 (Fla. 1st DCA 2015) (repeating concerns of *Calloway* and *Joyner* and deferring ineffective assistance of counsel claim to post-conviction proceedings because "[w]e cannot say with confidence there is no conceivable tactical explanation for the conduct of [defendant's] trial counsel" in allowing erroneous instruction to go to the jury).

Reviewing courts should not countenance counsel's tactical inaction. *See Morales v. State*, 170 So. 3d 63, 67 (Fla. 1st DCA 2015) (allowing courts to consider claims of ineffective assistance of counsel on direct appeal only in those rare cases where there is "an inconceivable tactical explanation for the conduct"). We will not promote the possibility of "deliberate sandbagging." *Ferry v. State*, 507 So. 2d 1373, 1375 (Fla. 1987) (finding a valid waiver of defendant's right to participate in jury selection when he voluntarily left the room). To protect against tactical manipulation of the legal system, we cannot take an overly narrow view of what constitutes a waiver of a fundamentally erroneous jury instruction. We have no indication from the Florida Supreme Court that it intended such consequences in its cases dealing with jury instruction error.

14

## (2) The Law Was Well Settled.

It is also significant to our analysis that by the time this case came to trial in February of 2014, our decision in *Montgomery* was five years old, and *Lamb* was rendered only a few months after *Montgomery*. The Florida Supreme Court's decision approving our decision in *Montgomery* was four years old. The supreme court's amended jury instruction was likewise four years old. *In re Amendments*, 41 So. 3d at 854-55. The supreme court's decision in *Williams* was sixteen months old.

It is difficult to believe that defense counsel was unaware of these five-year-old changes in the law directly relevant to his practice. He was obligated to stay abreast of developments in his practice area and was chargeable with knowledge of *Montgomery* and *Williams*. *See* R. Regulating Fla. Bar 4-1.1, Competence ("A lawyer must provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation."), and cmt. ("Maintaining competence. To maintain the requisite knowledge and skill, a lawyer should keep abreast of changes in the law and its practice, engage in continuing study and education, . . . and comply with all continuing legal education requirements to which the lawyer is subject."); *see also Johnson v. State,* 796 So. 2d 1227, 1228–29 (Fla. 4th DCA 2001) ("A reasonably effective criminal defense attorney must keep himself or herself informed of significant developments in the criminal law . . . .") (cited in *Monroe v. State*, 191 So. 3d 395, 404 n.7 (Fla. 2016) (noting that defense counsel should have been aware of decision rendered two years prior to the trial at issue)). Taken together, the passage of time since the instruction was invalidated, coupled with counsel's obligation to stay abreast of that important development in the law and his failure to object, support the conclusion that the objection is deemed waived. *Ray*, 403 So. 2d at 961.

### (3) Counsel's Approval and Involvement.

Defense counsel's active involvement in developing the jury instructions also supports our finding of waiver. Although Appellant trivializes his counsel's involvement in development of the final instructions, counsel's involvement went well beyond the superficial. This was not a situation of a word or phrase missing from an instruction that could be overlooked easily, nor was it a situation where both sides superficially agreed to the proposed instructions and never revisited them. Rather, the entire incorrect instruction was present from the beginning, and the record reflects that counsel was actively, repeatedly involved in reviewing and revising the instructions multiple times from before the trial through submission of the case to the jury. Counsel for both parties had discussed jury instructions before the charge conference and had agreed on some changes. Defense counsel asserted at the beginning of trial that *he had read and had no objections to* the jury instructions. As the discussion developed, he requested changes and additions, adding three lesser battery offenses to the instructions and verdict form, and thereby gave the jury plenty of opportunities to exercise its pardon power if it was inclined to do so. He consulted with his client, and made a stipulation to obtain instructions on more favorable lesser offenses.

During a recess after the state rested, the parties placed on the record additional changes to the jury instructions discussed between counsel with respect to the instruction for aggravated battery and the definition of a weapon for the weapon aggravation instruction, specifically including the voluntary manslaughter instruction. Defense counsel agreed to have the court read the instructions to the jury before closing arguments. No other discussion focused on the manslaughter instruction in general or specifically on the erroneous intent-to-kill language in that instruction.

The court orally instructed the jury prior to closing arguments, without objection from either party. The court instructed the jury on the original charge of attempted first-

degree premeditated murder with a weapon, and on *eight* lesser offenses: attempted first-degree premeditated murder, attempted second-degree murder with a weapon, attempted second-degree murder, attempted voluntary manslaughter with a weapon, attempted voluntary manslaughter, aggravated battery with a deadly weapon or great bodily harm, felony battery with great bodily harm, and battery.

Closing arguments focused on the charged crime of attempted first-degree premeditated murder, with the state arguing among other things that intent to kill was obvious from the evidence including the nature and severity of the victim's injuries. Defense counsel argued several times that the evidence did not prove Appellant intended to kill the victim. After closing arguments, the trial court called to counsels' attention several discrepancies where the instructions did not list all lesser-included offenses, and the court proposed to instruct the jury to note those instances and refer to the verdict form for complete information. Defense counsel agreed with the proposal. The jury returned a verdict finding Appellant guilty of attempted second-degree murder with a weapon. Defense counsel polled the jury, which confirmed its verdict.

The parties dispute whether these facts support a finding that defense counsel waived the error in the manslaughter instruction. Neither *Montgomery* nor *Williams* addressed the question of whether the fundamental error in giving the improper jury instructions was waived. This Court in *Moore* addressed waiver of the specific erroneous jury instruction at issue here. 114 So. 3d at 489-90. *Moore* involved two errors in an instruction on manslaughter as a lesser-included offense, including its use of the erroneous requirement that the state prove intent to kill. *Id.* at 488-89. We refused to grant a new trial due to the erroneous intent element in the jury instruction, finding on the facts of *Moore* that counsel waived the error. The trial court and prosecutor in *Moore* expressly raised the inclusion of the intent language as a possible error, to which defense counsel did not respond; but they ended up agreeing to use the standard instruction from 2008, which did include the intent language. The

17

court read the instruction out loud and defense counsel agreed with it, declining to add anything to it. The instructions were given with no objections.

On our review of Moore's direct appeal, we concluded that the facts established a waiver of the fundamental error arising from including the element of intent in the manslaughter instruction. *Moore*, 114 So. 3d at 489. Of particular weight was the fact that the trial court expressly directed defense counsel's attention to the intent element as a potential error, and counsel agreed to using the language anyway because it was in the standard instructions (albeit an outdated version, which no one mentioned). *See also Joyner*, 41 So. 3d at 307 (finding waiver where counsel specifically agreed with the erroneous instruction for manslaughter by act, and referenced it in his closing argument). More recently, we found a waiver of this same jury instruction error where defense counsel agreed to the instruction at the charging conference and declined to challenge the language though he had several opportunities to do so, and the parties discussed *Montgomery*. *Facin*, 188 So. 3d at 860-61, *review denied*, No. SC15-1234, 2016 WL 3002446 (Fla. May 25, 2016). In *Moore*, *Joyner*, and *Facin*, then, the error in the manslaughter jury instruction was addressed expressly, making a clear case for waiver at one end of the factual spectrum.

We do not, however, construe our holdings in these cases as limited to their specific facts; and specifically we do not hold that a waiver results only when the record expressly reflects that defense counsel was aware of *Montgomery* or *Williams* and still failed or refused to object to the jury instruction. Other facts may suffice to demonstrate a waiver, and we find the facts and circumstances of this case demonstrated a waiver. We are aware that as a general rule a waiver will not result from mere ignorance or unknowing acquiescence, but we find that more than mere unknowing acquiescence occurred here.

We note again that the Florida Supreme Court declined to address these issues on review of our decision in *Moore*, instead discharging jurisdiction after briefing and oral argument even

though the briefs and argument raised these and related issues. 181 So. 3d at 1186-87. While we do not hold that mere inaction suffices to constitute a waiver, we also refuse to go so far as to require facts equaling or approaching those of *Moore* before finding a waiver. On the facts of this case, we find that defense counsel waived the fundamental error in the improper jury instruction for manslaughter, and therefore we affirm Appellant's conviction and sentence on this alternative basis.

## III. CERTIFIED CONFLICT.

We certify conflict with *Caruthers v. State*, 232 So. 3d 441 (Fla. 4th DCA 2017).

## IV. CERTIFIED QUESTION OF GREAT PUBLIC IMPORTANCE.

We ask the Florida Supreme Court to resolve the following question, which we certify is of great public importance:

> IN ORDER FOR COUNSEL TO WAIVE AN ERROR IN A JURY INSTRUCTION THAT WOULD OTHERWISE BE FUNDAMENTAL, IS IT ONLY NECESSARY THAT COUNSEL AFFIRMATIVELY AGREE TO THE INSTRUCTION, OR IS IT ALSO NECESSARY FOR COUNSEL TO AFFIRMATIVELY AGREE TO THE PORTION OF THE INSTRUCTION THAT IS ERROR AND/OR TO BE AWARE THAT THE INSTRUCTION IS ERRONEOUS?

*See Moore*, 114 So. 3d at 493 (certifying same question).

AFFIRMED; CONFLICT CERTIFIED; QUESTION OF GREAT PUBLIC IMPORTANCE CERTIFIED.

WETHERELL, J., concurs; WOLF, J., concurs in part and dissents in part with opinion.

19

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

WOLF, J., concurring in part and dissenting in part.

I concur fully in part I of the majority opinion and would affirm on that basis. I also concur in part III of the majority opinion, which certifies conflict with the Fourth District case of *Caruthers v. State*, 232 So. 3d 441 (Fla. 4th DCA 2017).

I dissent from part II of the majority opinion for the reasons stated in my dissenting opinion in *Knight v. State*, 41 Fla. L. Weekly D1760 (Fla. 1st DCA Jul. 28, 2016). The text of that opinion with updated citations follows.

I respectfully dissent because I would find there was no waiver of the fundamental error contained in the jury instructions. The majority holds that defense counsel's participation in discussions and drafting of instructions other than the instruction at issue, coupled with an imputed knowledge of the law concerning the defective instruction, constituted a waiver of the fundamental error. That conflicts with all existing case law generally concerning the concept of waiver and specifically pertaining to waiver of fundamental error contained in a jury instruction.

The majority correctly points out that waiver "is the **voluntary** and **intentional** relinquishment of a **known right**, or conduct which implies the **voluntary** and **intentional** relinquishment of a **known right**." *Major League Baseball v. Morsani*, 790 So. 2d 1071, 1077 n.12 (Fla. 2001) (emphasis added). In the context of jury instruction, a "record . . . [that] reflects nothing more than unknowing acquiescence" is insufficient to show waiver of fundamental error. *Williams v. State*, 145 So. 3d 997, 1003 (Fla. 1st DCA 2014). *See also*

20

*Swearingden v. State*, 213 So. 3d 370 (Fla. 1st DCA 2015) ("because the record does not reflect that he specifically requested or affirmatively agreed to the challenged portions of the instructions, he did not waive the issue for appeal"); *Burns v. State*, 170 So. 3d 90, 94 n.3 (Fla. 1st DCA 2015) ("The record . . . reflects nothing more than . . . unknowing acquiescence" by agreeing generally to the jury instructions as proposed, which "falls far short of an affirmative agreement" necessary to waive fundamental error); *Moore v. State*, 114 So. 3d 486, 492-93 (Fla. 1st DCA 2013) (finding no waiver of fundamental error where there was not "any indication that counsel was alerted to the fact the instruction was incomplete"); *Black v. State*, 695 So. 2d 459, 461 (Fla. 1st DCA 1997) (finding in order for counsel to waive the fundamental error of failing to instruct on justifiable or excusable homicide, "defense counsel must be aware that an incorrect instruction is being read and must affirmatively agree to, or request, the incomplete instruction").

Here, as in *Williams*, 145 So. 3d at 1003, the record reflects nothing more than unknowing acquiescence. The majority's decision to presume that defense counsel in this case was aware of the specific legal issue implicated in *State v. Montgomery*, 39 So. 3d 252 (Fla. 2010), simply because counsel was a criminal attorney is contrary to the well-established precedent cited above which holds that it must be clear from the face of the record that counsel knowingly and affirmatively agreed to the erroneous instruction. To presume that all criminal defense attorneys are actively aware of and contemplating all well-settled criminal law at all times during trial would essentially presume that all fundamental error is waived. Thus, I dissent.

_____

Andy Thomas, Public Defender, Glen P. Gifford, Assistant Public Defender, and Steven L. Seliger, Assistant Public Defender, Tallahassee, for Appellant.

21

Pamela Jo Bondi, Attorney General, Kaitlin Weiss, Assistant Attorney General, and Virginia Harris, Assistant Attorney General, Tallahassee, for Appellee.

---

### ORDER ON MOTION FOR REHEARING EN BANC

A judge of this Court requested that this cause be reheard en banc in accordance with Florida Rule of Appellate Procedure 9.331(d). All judges in regular active service have voted on the request. Less than a majority of those judges voted in favor of rehearing en banc. Accordingly, the request for rehearing en banc is denied.

WOLF, LEWIS, ROBERTS, WETHERELL, ROWE, OSTERHAUS, KELSEY, WINOKUR, WINSOR, and M.K. THOMAS, JJ., concur.

B.L. THOMAS, C.J., concurs with opinion.

RAY, BILBREY, and JAY, JJ., dissent.

MAKAR, J., dissents with opinion.

---

B.L. THOMAS, C.J., concurring in the denial of rehearing en banc.

In my view, Appellant should not be entitled to a new trial, solely because Appellant's attorney failed to inform the trial court that its proposed jury instruction was erroneous under well-established precedent. In its alternative holding, the majority opinion properly addresses the underlying "bizarre incentive" this court discussed in *Calloway v. State,* 37 So. 3d 891, 896-97 (Fla. 1st DCA 2010), *rev. denied,* 51 So. 3d 1154 (Fla. 2010), in cases such as this. Unjustified retrials of criminal cases impose pain and suffering on crime victims and their families, who must unnecessarily undergo the trauma of another jury trial, along

22

with the decrease of public confidence in the administration of justice. Forty years ago, the Florida Supreme Court emphasized the critical importance of the contemporaneous-objection rule:

> The requirement of a contemporaneous objection is based on practical necessity and *basic fairness* in the operation of a judicial system. It places the trial judge on notice that error may have been committed, and provides [the judge] an opportunity to correct it at an early stage of the proceedings. Delay and an unnecessary use of the appellate process result from a failure to cure early that which must be cured eventually.

*Castor v. State,* 365 So. 2d 701, 703 (Fla. 1978) (emphasis added). The wisdom of this decision is just as valid today. Thus, I concur in the decision to deny rehearing en banc in this case.

_____

MAKAR, J., dissenting from the denial of rehearing en banc.

Criminal defense lawyers take heed: you may have thought that a waiver of your client's known rights required that you voluntarily and intentionally relinquish them or engaged in conduct that implied such a waiver because, after all, that has been the well-worn, long-accepted legal standard. No longer. Now your mere participation in the jury instructions process is sufficient to imply, according to the panel majority, the waiver of any fundamentally erroneous instruction contained therein; that is so even if no one—neither you, the prosecutor, nor the trial judge—knew of or was made aware of the error, transforming what had been known as "unknowing acquiescence"—which precedent says is not a waiver—into a voluntary and intentional abandonment of your client's rights.

As Judge Wolf's dissent explains, the panel's decision formulates an entirely new approach to implied waiver that cannot be reconciled with our precedent, making this case *per se*

23

en banc-worthy, notwithstanding the original en banc motion garnering one-third of the Court's support and a renewed motion on the panel's revised opinion slightly less. As in its original opinion, *Knight v. State* (*Knight I*), No. 1D14-2382, 2017 WL 4036091, at *1 (Fla. 1st DCA July 28, 2016), the panel majority adheres to the correctness of its new standard for implied waiver of a fundamentally erroneous jury instruction. *Knight v. State* (*Knight II*), 1D14-2382, slip op. at 10 ("adher[ing] to our original holding" as to waiver). As the primary dissent does, this dissental addresses why the newly-crafted standard for implied waiver is inconsistent with precedent, thereby making en banc review necessary on this issue.[1]

---

[1] *Knight II* passes upon the previously-raised waiver issue as well as a new issue raised by the panel as to the jury pardon doctrine, affirming Knight's conviction and sentence on those "two alternative grounds." *Knight II*, slip. op. at 2. This dissental addresses only one of these grounds: the waiver issue, which was the subject of motions for rehearing en banc in 2016 and 2018. The alternative ground for affirmance, under the jury pardon doctrine, is newly issued and has not been subject to rehearing or rehearing en banc. Either of the alternative grounds are properly subject to en banc review because "[w]hen the record presents several questions, and the court considers and deliberately decides each one, the case is precedential for them all. Both of two or more explicitly alternative holdings count as holdings-not as dicta." BRYAN GARNER ET. AL., THE LAW OF JUDICIAL PRECEDENT 115 (2016) (Chapter 10. "Multiple questions decided"). Absent this well-accepted principle, an "entire opinion [with alternative holdings] becomes nonbinding dicta." *Id.* at 124. Plus, courts have long held that alternative holdings are precedential. *See Woods v. Interstate Realty Co.*, 337 U.S. 535, 537 (1949) ("But where a decision rests on two or more grounds, none can be relegated to the category of obiter dictum."); *Richmond Screw Anchor Co. v. United States*, 275 U.S. 331, 340 (1928) ("It does not make a reason given for a conclusion in a case obiter dictum, because it is only one of two reasons for the same conclusion."); *Clemons v. Flagler Hosp., Inc.*, 385 So. 2d 1134, 1136 n.4 (Fla. 5th DCA 1980) (stating that the holding "is

To begin, everyone agrees that precedent requires that waiver be demonstrated by facts establishing "the voluntary and intentional relinquishment of a known right, or conduct which implies the voluntary and intentional relinquishment of a known right." *Major League Baseball v. Morsani*, 790 So. 2d 1071, 1077 n.12 (Fla. 2001). Likewise, precedent states that neither the failure of defense counsel to lodge an objection to a fundamentally erroneous jury instruction nor his "unknowing acquiescence" in such an instruction amounts to a waiver of his client's right. *See Moore v. State*, 114 So. 3d 486, 493 (Fla. 1st DCA 2013), *rev. granted*, 168 So. 3d 229 (Fla. 2014), *dismissed*, 181 So. 3d 1186 (Fla. 2016); *Burns v. State*, 170 So. 3d 90, 94 n.3 (Fla. 1st DCA 2015). Moreover, everyone agrees—including the State—that one of the jury instructions given in this case was erroneous and constituted fundamental error under *State v. Montgomery*, 39 So. 3d 252, 259 (Fla. 2010) and *Williams v. State*, 123 So. 3d 23, 30 (Fla. 2013).[2]

Yet the majority finds waiver of the defendant's right to assert this fundamental error on appeal *solely by conjecture* arising from (a) his trial lawyer's *general participation* in the

_____

authoritative on the point notwithstanding that the court also relied on another ground for its decision"). Because the waiver portion of this case will be precedential and will be relied upon by courts and practitioners, it remains an appropriate subject of en banc review.

[2] In *Knight I*, the majority said the "giving of this erroneous jury instruction constituted fundamental error." 2017 WL 4036091, at *2 (citing *Montgomery* and *Williams*). In *Knight II*, however, the panel now says that giving the "erroneous jury instruction [in Knight's case] constituted fundamental error under *prior* supreme court precedent," such as *Montgomery* and *Williams. Knight II*, slip. op. at 12 (emphasis added). This latter statement is apparently based on the panel's view, in its revised opinion, that *Dean v. State*, 230 So. 3d 420, 427 (Fla. 2017) has abrogated the jury pardon doctrine and thereby overruled these two supreme court decisions.

25

preparation and review of jury instructions *other than the specific one at issue*, and (b) the unsubstantiated belief that defense counsel *must have been aware* of the jury instruction error (due to legal developments in the past five years) and *strategically ignored it for tactical reasons* to create reversible error. But no record evidence shows that defense counsel knew of or was made aware of the erroneous instruction as precedent requires; the trial judge and prosecutor both missed it too. And nothing but supposition supports the belief that defense counsel knowingly and intentionally engaged in a stratagem or ploy to dupe the court and create reversible error on appeal.

As Judge Wolf points out, the majority's approach "conflicts with all existing case law generally concerning the concept of waiver and specifically pertaining to waiver of fundamental error contained in a jury instruction." *Knight II*, slip. op. at 20 (Wolf, J., concurring in part, dissenting in part). Because the "record reflects nothing more than unknowing acquiescence," *id.* at 21, the correct result under our precedent is to find no waiver. *See, e.g.*, *Burns*, 170 So. 3d at 94 n.3 ("The record in the present case reflects nothing more than what the cases term unknowing acquiescence.") (citing numerous cases); *Williams v. State*, 145 So. 3d 997, 1003 (Fla. 1st DCA 2014) ("Nothing supports the view that defense counsel affirmatively agreed to the omission, knowing that the instructions were incomplete.").

Nothing distinguishes this case from our prior precedents, which hold that merely agreeing generally to a set of proposed jury instructions is not a waiver. *See, e.g.*, *Moore*, 114 So. 3d 486. In *Moore*, we recognized that "while it is clear counsel affirmatively agreed to the manslaughter instruction as read to the jury, he did not specifically and affirmatively agree to exclude the required instruction on justifiable or excusable homicide. Instead, he failed to object to that error. *Merely failing to object cannot waive fundamental error*." *Id.* at 493 (emphasis added). On the other hand, waiver was found as to one proposed jury instruction in *Moore* where the "trial court specifically brought to counsel's attention the problem of the intent language in the proposed jury instruction and offered to strike that language" but

counsel insisted on inclusion of the specific erroneous instruction. *Id.* This case is controlled by *Moore* and related precedents because defense counsel's active participation in the jury instruction process did not extend to approval of the specific erroneous instruction at issue (he failed to object); and he did not approve or insist upon use of the specific erroneous instruction, which was not brought to his attention. This is nothing more than "unknowing acquiescence" by defense counsel and all other participants.

The "facts of this case" demonstrated a waiver, the majority claims, yet it takes speculation and insupportable attribution of ill motive to defense counsel to reach this conclusion on the sparse record presented. *Knight II*, slip. op. at 19. It skeptically finds it "difficult to believe" that defense counsel "was unaware" of changes to the jury instructions, implying that defense counsel was in fact aware of the changes such that his failure to object to the defective instruction was intended to inject error. *Id.* at 15.

But defense counsel's actual knowledge of the law is not addressed anywhere in the record, which reflects only that he— as well as the trial judge and prosecutor—made the same mistake in overlooking the erroneous jury instruction. Why impute intentional inaction and ill motive to defense counsel when neither the prosecutor nor the trial judge caught the error? We should not censoriously impute that a lawyer engaged in an intentional "tactical manipulation" without supporting evidence. *Id.* at 14. Indeed, by symmetric thinking, presumably both the trial judge and the prosecutor—who also have an obligation to stay abreast of changes in the law—were aware of the erroneous jury instruction and intentionally overlooked it, rather than being merely remiss or inattentive; each shares some degree of responsibility for ensuring the correctness of jury instructions used in criminal cases of this type where a retrial would necessarily impose avoidable costs on the judicial system, great inconvenience for witnesses, and further trauma to victims. The crime here was atrocious, making it all the more important for the trial judge, defense counsel, and prosecutor to apply the

correct law and avoid a retrial and its collateral costs and impacts on those involved.

The majority opinion originally said that on the few facts presented, "counsel's agreement to the erroneous instruction was *intentional*, and therefore that he waived Defendant's right to now object to the instruction in order to obtain a new trial." *Knight I*, 2017 WL 4036091, at \*5 (emphasis added). Notably, the majority opinion now *eliminates* all reference to its prior conclusion that the purported waiver was "intentional." *Compare Knight I*, 2017 WL 4036091, at \*5, *with Knight II*, slip. op. at 1. The only mention of the word "intentional" in the new opinion is its statement of the standard for establishing waiver. *Knight II*, slip. op. at 13. It is not mentioned thereafter.

Rather than say that an "intentional" waiver occurred, the majority takes a different approach, concluding that waiver exists because "experienced" defense counsel *may* have had a "*plausible strategic reason*" for overlooking the erroneous jury instruction. *Id.* at 13 ("Very significant to our analysis is the existence of a *plausible strategic reason* for allowing the instruction to go to the jury.") (emphasis added). But there are "plausible strategic reasons" for most everything; that a "plausible strategic reason" for inaction *might* exist doesn't mean a lawyer acted accordingly, unless one assumes so or has proof. It is just as plausible, if not most likely on this record, that defense counsel unknowingly acquiesced in the erroneous instruction, especially given that neither the trial judge nor the prosecutor knew of or pointed out the error: everyone made the same mistake. "Plausible strategic reasons" may underlie inadvertent prosecutorial errors, but courts don't rotely impute bad motives in those situations.

The "plausible strategic reason" standard also uproots the existing implied waiver standard in this way. No case says that a mere *likelihood* that defense counsel *may* have acted intentionally for strategic reasons is sufficient to establish an intentional waiver by implication; a *likelihood* of this sort theoretically exists in every case, making this an empty standard when the "voluntary and intentional relinquishment of a known

28

right" must be proven. *May have* is no substitute for *must have* when it comes to waiver of legal rights. To conclude that defense counsel must have known the jury instruction was erroneous, and cunningly ignored it as a stratagem (thereby ascribing knowledge, bad motive, and intentional conduct), is pure speculation on this record. Having deemed defense counsel a crafty mastermind seeking to inject reversible error, the majority declares that "[r]eviewing courts should not countenance counsel's *tactical inaction.*" *Id.* at 14 (emphasis added). Of course we shouldn't, but nothing in the record supports a conclusion of intentional "tactical inaction" or sandbagging by defense counsel. Other than supposition, nothing suggests that defense counsel failed to challenge the erroneous instruction as a deliberate tactic or ploy for strategic advantage. At most, the record establishes "unknowing acquiescence," which precedent holds is not an intentional waiver. The majority originally dubbed it "silent acquiescence," *Knight I*, 2017 WL 4036091, at *5, (the phrase is now gone) but every fundamental error of this type necessarily arises from a failure to object, which is typified by silence. Unknowing acquiescence is the legal standard that governs this case, where no intentionality is shown.

Two final points. First, it is incorrect to say that defense counsel agreed to the specific erroneous instruction; he did not. As in *Moore*, he agreed to the instructions *generally* and did not accede knowingly to the *specific* erroneous instruction at issue; the former "cannot waive fundamental error." 114 So. 3d at 493. Had the specific instruction and its error been brought to defense counsel's attention, and yet he still insisted on its inclusion, a waiver may exist under *Moore. Id.* (stating that the "trial court specifically brought to counsel's attention the problem of the intent language in the proposed jury instruction and offered to strike that language"). The majority sidesteps *Moore*, concluding that counsel's agreement to the set of jury instructions *generally*, not to the specific erroneous instruction, is sufficient to constitute a waiver. *Knight II*, slip op. at 16-17. It characterizes this general agreement as "Counsel's Approval and Involvement" in the jury instructions used, and deems it sufficient for imputing intentional waiver. But merely approving instructions generally

29

or having involvement in them generally, without the type of specific waiver as in *Moore*, is insufficient under our precedent.

Second, the new implied waiver standard, which is based on "experienced" counsel's failure to object to an erroneous instruction for a "plausible strategic reason," raises a range of factual considerations relevant to the implied waiver inquiry that should be considered (but aren't in this case), such as: How long must defense counsel have practiced criminal law to be considered "experienced"? How many times has he handled this type of case? Has he made the same mistake before? Is this the first time he has represented a client on such a matter? How old must the legal development be to justify imputing knowledge and intentional conduct? Was this the first or hundredth trial for the judge and prosecutor? What was their knowledge of the law? Had the trial judge given, or the prosecutor not objected to, the erroneous instruction before? What version of the judges' bench books and lawyers' form libraries may have been consulted, and were they updated in recent years? And so on. Let's not forget that the waiver issue was first raised on appeal in this Court, such that no notice and hearing has been accorded to flesh out the facts and adjudge credibility. All we have is an inanimate trial transcript, which neither addresses nor sheds light on these or related factual matters, making an appellate crystal ball a necessity to glean voluntariness and intentionality in this case.

\* \* \*

Waiver is designed to be difficult to establish, else valuable rights—civil or criminal—are lost unintentionally and involuntarily. But the majority's new approach to implied waiver creates a tautological forfeiture of such rights: a fundamentally erroneous jury instruction is impliedly waived because it is *assumed* that defense counsel *knew of the erroneous instruction* and *acted tactically and intentionally* in allowing it. This approach turns our precedent on its head, changing what has long been fundamental error into no error at all. We have previously said that "[m]erely failing to object cannot waive fundamental error," *Moore*, 114 So. 3d at 493, yet the panel

30

majority says the opposite: defense counsel had the "responsibility" to object to the erroneous jury instruction and his failure to do so amounts to an implied waiver because he may have acted tactically. This is another way of saying goodbye to the fundamental error doctrine; how else can fundamental error exist but for the lack of an objection?

In short, this is not a case where defense counsel asked for or invited an erroneous instruction; neither he—nor the prosecutor or judge—were aware of it. And nothing in the record supports imputation of a voluntary and intentional waiver of a known right, let alone bad motive or tactical premeditation. Imputing waiver without a non-speculative factual basis in the record for doing so violates precedent and takes away a defendant's right based solely on appellate surmise. Because the majority's new implied waiver formula (general participation/involvement in jury instructions process + imputed knowledge of law/imputed bad motive = waiver) is at odds with our precedents, en banc review is warranted.

Short of en banc review, this type of dramatic shift in judicial precedent ought to be done, if deemed appropriate, by our supreme court. It is for that court, not a district court, to decide in the first instance whether to chart a new course on a topic as well-established as waiver of a client's rights in a criminal case. Long ago, in *Hoffman v. Jones*, a district court "exceeded its authority" by holding that comparative negligence displaced contributory negligence, a change in the law that only the supreme court was allowed to make (under its view of separation of powers at the time).[3] District courts must follow existing law, but are empowered to suggest reforms: if they have doubt or

---

[3] 280 So. 2d 431, 436 (Fla. 1973) ("We are . . . of the opinion that we do have the power and authority to reexamine the position we have taken in regard to contributory negligence and to alter the rule we have adopted previously in light of current 'social and economic customs' and modern 'conceptions of right and justice.'") (citation omitted).

believe existing law should change, they "are free to certify questions of great public interest to [the supreme court] for consideration, and even to state their reasons for advocating change." *Id.* at 434. The panel majority does the opposite of what *Hoffman* requires: it has leapfrogged precedent, altered the law of waiver, and now asks our supreme court to bless its handiwork. Our appellate judicial system operates structurally on getting permission, not asking for forgiveness; that our supreme court didn't answer the question certified in *Moore* doesn't empower us to alter the contours of waiver law unilaterally with the hope that a future supreme court will change course and see it our way.

All this said, a certified question—now added to the panel's opinion in *Knight II*—is appropriate to allow the supreme court to consider the issues raised, understanding that it may choose to reframe them. This case factually is a poor vehicle for a finding of implied waiver, but the supreme court may be able to provide guidance on whether implied waiver can be adjudged for the first time on appeal without an evidentiary record or a fact-finding hearing bearing on the matter; it may also weigh in on what facts must be established in support of an implied waiver, such as the actual knowledge and trial experience of the defense counsel, whether defense counsel has made this same oversight in other cases, the length of time a jury instruction has been invalidated, and so forth. Waiver by implication is not favored, but future cases may exist with adjudicated facts establishing that defense counsel acted voluntarily and intentionally to create error by knowingly and strategically withholding an objection to a fundamentally erroneous jury instruction simply to get a new trial. On the record presented, this is not such a case.