STATE of Missouri, Respondent,

v.

Demond STEWARD, Appellant.

Demond STEWARD, Movant–Appellant,

v.

STATE of Missouri, Respondent.

Nos. 68278, 70533.

Missouri Court of Appeals,
Eastern District,
Division Four.

Dec. 31, 1996.

Ellen H. Flottman, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Joanne E. Joiner, Assistant Attorney General, Jefferson City, for respondent.

KAROHL, Judge.

Defendant, Demond Steward, appeals after sentencing for murder in the first degree, Section 565.020.1 RSMo Cum.Supp.1993, and armed criminal action, Section 571.015 RSMo 1986. He also appeals denial of his Rule 29.15 motion for postconviction relief without an evidentiary hearing.

Defendant does not contest the sufficiency of evidence to support the verdicts. The state charged and proved "on or about Thursday, February 10, 1994, at approximately 12:20 A.M., at 6754 Page, in the City of Pagedale, in the County of St. Louis, State of Missouri, Demond W. Steward after deliberation, knowingly killed Domamethris Caradine by shooting him." An earlier trial ended in a mistrial because the jury could not reach a verdict.

The state offered evidence from which the jury could find the following. On February 9, 1994, Domamethris Caradine met Eugene Donley at Climmie's Western Inn Lounge (Climmie's) at approximately 6:30 or 7:00 p.m. to play darts. After the dart game, Larry Prather met Caradine outside of Climmie's. Caradine was working under the hood of his green Bronco. Prather went across the street to a restaurant to buy some chicken wings. Steward, Patrick Cline and two women were in the restaurant. One of the women spoke to Prather. Steward challenged Prather for coming into the restaurant and trying to get all the women. Prather ignored Steward. The woman with whom Prather was talking said Steward "wasn't her man." When Prather turned to get his food, Steward hit him in the head several times. Prather ran out of the restaurant. He could not get into his car because as he was going towards it, Steward and Cline came out of the restaurant. Prather ran across the street. He told Caradine what happened.

Prather got into Caradine's Bronco. Caradine drove the Bronco to the restaurant. Steward was sitting in his girlfriend's white Delta '88. Caradine then rammed the Bronco into the back of the Delta '88. Steward drove away and Caradine pursued him. At 11:22 p.m., a police officer pulled Steward over. When Caradine saw Steward pulled over, he returned to the restaurant where he and Prather got into Prather's girlfriend's '89 Nissan Sentra.

Meanwhile, the officer asked Steward why he was speeding and why he was driving without his headlights on. Steward responded he was trying to get away from someone who had shot at him. He explained that his car had been rammed by a truck. The officer noticed a tail light was cracked. Cline showed the officer his restaurant receipt. The officer told Steward and Cline to follow him back to the restaurant. Steward followed the officer for a while, but not all the way to the restaurant.

While Prather drove towards where he and Caradine had seen Steward pulled over, they saw Steward following the police car. Prather and Steward passed each other. Steward then turned onto a side street. Prather turned around and drove down the same street. Steward had turned around. They passed each other again. Prather turned around and as he drove up behind Steward, Caradine started shooting. Prather then drove to a street near the restaurant. Caradine got out of the car and Prather drove home.

Meanwhile, the officer had continued driving towards the restaurant. He parked across the street from the restaurant. He saw the green Bronco slightly across from Climmie's. The officer then pulled up behind the Bronco. It was 11:33 p.m. He radioed for an assist car. When the assist car arrived, the officer approached the Bronco.

Donley, Caradine's dart partner, was sitting behind the wheel. Caradine's aunt was sitting in the passenger seat. The officer informed Donley he was investigating a possible leaving the scene or an assault. He asked Donley if he had been driving the Bronco. Donley indicated he had not, that the owner had driven the vehicle earlier that evening. The officer obtained Donley's consent to search the Bronco. He found no weapons. He noticed the front bumper of the Bronco had white paint on it.

Caradine approached from across the street. He was hostile towards the officer. The officer explained to Caradine why he had searched the Bronco. Caradine said Steward had shot at *him*. The officer, apparently satisfied with Caradine's explanation, left the scene at 11:59 p.m.

Donley, Caradine and Caradine's aunt went into Climmie's for a minute. The three then got into Caradine's Bronco. Caradine got into the driver's seat and Donley got into the seat behind Caradine. The back seat was a bench seat that sat rather high. Caradine started the Bronco and waited for it to warm up. Donley saw a car pull up. Someone came up to the driver's side window and shot Caradine several times. When the shooter paused, Donley saw him through a window. More shots were fired. Donley saw Steward get into a white Delta '88 which had a cracked back tail light. Steward then drove off. Caradine died of four gunshot wounds to the head.

Caradine's aunt went into Climmie's and called the police. The officer who had been at the scene earlier returned. It was 12:10 p.m. Donley told the officer the shooter was the same person the officer had stopped earlier. He later identified Steward in a police line up as the shooter.

The officer proceeded to the address to which the Delta '88 was registered. Steward drove up to that address at 3:30 a.m. in the Delta '88. Steward was then arrested.

Steward testified in his own defense. He denied shooting Caradine. He relied on alibi testimony. Steward's version of the preliminary events is similar to the state's version. He admits he punched Prather in the restau-

rant. He testified Caradine rammed the Delta '88 with his Bronco and that Caradine later shot at him. Where his version conflicts with the state's evidence is on the events that occurred after Caradine shot at him. He claims after he was shot at, he ducked down, accelerated and drove to Allan Berry and Sarah Evans' house. Berry and Evans testified he arrived at their house a little after 11:30 p.m. and that he stayed there until sometime after 3:00 a.m. Evans' mother was present when Steward arrived. She did not testify.

■■■■ In his direct appeal, Steward argues the trial court erred in refusing to instruct the jury on second degree murder and voluntary manslaughter. Trial courts are not obligated to instruct on a lesser included offense unless there is a basis for a verdict acquitting the defendant of the greater offense and convicting him of the included offense. Section 556.046.2 RSMo 1986; *State v. Mease*, 842 S.W.2d 98, 110–111 (Mo. banc 1992). The question is whether the evidence, in fact or by inference, provides a basis for both an acquittal of first degree murder *and* a conviction of second degree murder or a conviction of voluntary manslaughter. The element at issue is deliberation. *State v. Stepter*, 794 S.W.2d 649, 652 (Mo. banc 1990). In most homicide cases, a defendant is entitled to a second degree murder instruction, if requested. This is particularly true where the evidence of deliberation is contradictory and confusing. *Mease*, 842 S.W.2d at 112.

■■■ In this case the evidence of deliberation is clear and uncontested. Deliberation is defined as "cool reflection for any length of time no matter how brief." Section 565.002.3 RSMo 1986. The state's evidence was Caradine was sitting in his Bronco letting it warm up. A car pulled up, Steward got out of the car, walked to the driver's side window and shot Caradine several times through a rolled up window. Steward paused and then shot Caradine again. Steward's evidence was that he was at a friend's house when Caradine was shot. The evidence supported only a finding of an intentional killing. Moreover, when a defendant denies the commission of the charged crime and there is no evidence which mitigates the offense or provides a

different version of it, instructing down is not required. *State v. Felton*, 834 S.W.2d 883, 885 (Mo.App. E.D.1992). Point denied.

In his second point, Steward argues the motion court erred in the denial of his 29.15 motion without granting an evidentiary hearing. He argues he pleaded factual allegations in his 29.15 motion, which if proved, would warrant relief and which are not refuted by the record. He alleged he was denied effective assistance of counsel because his attorney failed to investigate, subpoena and call Lenora Evans as an alibi witness.

Appellate review of the denial of a post-conviction motion is limited to a determination of whether the findings of fact and conclusions of law by the motion court are "clearly erroneous." Rule 29.15(k). Findings and conclusions are clearly erroneous only if a review of the entire record leaves the court with a definite and firm impression that a mistake has been made. *State v. Vinson*, 800 S.W.2d 444, 448 (Mo. banc 1990).

■ The motion court denied Steward's 29.15 motion without an evidentiary hearing. The issue here is whether the motion court was clearly erroneous in failing to grant Steward an evidentiary hearing for his Rule 29.15 motion.

■ "If the [motion] court shall determine the motion and the files and records of the case conclusively show that the movant is entitled to no relief, a hearing shall not be held." Rule 29.15(h). To be entitled to a hearing on the issue of failure to call witnesses, a movant must allege: (1) the witnesses could have been located through reasonable investigation; (2) they would have testified if located; and, (3) their testimony would have provided a viable defense. *State v. Roe*, 845 S.W.2d 601, 605 (Mo.App. E.D. 1992).

In its findings of fact and conclusions of law, the motion court found Steward's claim of ineffectiveness of counsel for failure to call Lenora Evans, an alibi witness, failed because: (1) Steward had "failed to allege a right of relief ... in his amended motion because he fails to show exactly what the witness would have testified to had she been called, and that the testimony would have

provided him with a viable defense."; and, (2) the proffered alibi witness' testimony "would have been cumulative evidence and the failure to present such can not satisfy the prejudice test for ineffective assistance of counsel."

Steward alleged in his motion that he:

informed counsels before trial that he was at Sarah Evans['] mother's house at the time of the crime, and that her mother [Lenora Evans] was present with her and Allen Berry watching T.V. when [Steward] and Patrick Cline came to there [sic] house at 11:30 Pm,[sic] and did in fact watch T.V. with them until 3:00 Am [sic].

He also alleged:

[h]ad trial counsel called Lenora Evans, he would have had a disinterested witness that would have helped to corroborate [Steward] and his friends['] testimony because, Mrs. Evans [sic] did not have a reason to lie for movant and she would have been more believable and credible to the jury, than for counsel to just call [Steward's] personal friends.... [H]e would have found out that [Mrs. Evans] ... could have testified to the exact time that [Steward] and Patrick Clime [sic] arrived at her house and the exact time that they left her house.... Had counsel called this witness, there is a reasonable probability that the out come [sic] of [his] trial would have been different.

The motion court's finding that defendant failed to allege what would have been Lenora Evans' testimony is clearly erroneous. Defendant's motion alleged Lenora Evans was present when he arrived at her home at 11:30 p.m. and until the time he left at 3:00 a.m. on the night of the shooting. She would have testified at trial to the exact time he arrived and left her home and this testimony would have corroborated other less credible, witnesses' testimony. The motion court's finding that this testimony would not have provided Steward with the viable defense is clearly erroneous. The state's evidence supported a finding the murder occurred between 11:59 p.m. and 12:10 a.m. Lenora Evans' proffered testimony would have pro-

vided Steward with the viable defense of alibi.

There are two problems with the motion court's second finding that the proffered alibi testimony would have been cumulative. First, the credibility of two alibi witnesses who did testify at trial was seriously wounded by cross-examination. Second, the state argued in closing that the absence of the testimony of Lenora Evans was a basis to reject Steward's alibi defense. The state argued:

> Every alibi witness that they called lied to you. That was proven. Let me ask you one thing also that you should think about. Where was Sarah's mom, right? They didn't call her, did they? She is probably the one witness that would not come in and lie for [Steward]. Because she could not have verified the story.

The 29.15 motion challenges the state's theory that Sarah's mom, Lenora Evans, would not support defendant's alibi. The state's closing argument forecloses a finding by the motion court that her testimony would have been merely cumulative.

The motion court clearly erred by failing to grant an evidentiary hearing on Steward's ineffective assistance of counsel claim involving his counsel's failure to call Lenora Evans as an alibi witness. The motion was sufficient and the record does *not* conclusively show that the movant is entitled to no relief. Therefore, a hearing should have been granted on Steward's claim of ineffective assistance of counsel for his counsel's failure to call Lenora Evans. *See* Rule 29.15(g).

Steward also argues ineffective assistance of counsel because his counsel failed to call Aretha Neal and Andrea Patterson as witnesses. Steward's motion alleged these witnesses were at the restaurant with Steward and Cline when the original confrontation between Steward and Prather occurred. At trial, the state asked Steward if he had told Prather, "Dog, you trying to get all the hose [sic]." Steward alleged Neal and Patterson, if called, would have testified he did not make that statement. This point has no merit.

The motion court did not clearly err in denying, without an evidentiary hearing, Steward's claim of ineffective assistance of counsel for failure to call Neal and Patterson as witnesses. The allegations, if proven, do not provide a viable defense and would not support a finding defendant was prejudiced.

Steward raises two pro se points on direct appeal. We have reviewed the entire record and find neither are preserved. Furthermore, they are without merit, either as matters of plain or preserved error. No jurisprudential purpose would be served by a written opinion on these two pro se points. Points denied. Rule 30.25(b).

We affirm the sentences for first degree murder and armed criminal action. We reverse and remand the motion court's denial of Steward's Rule 29.15 motion without an evidentiary hearing. On remand the motion court should grant an evidentiary hearing on Steward's ineffectiveness of counsel claim for failure of counsel to investigate and call Lenora Evans as an alibi witness.

RHODES RUSSELL, P.J., and SIMON, J., concur.