# Supreme Court of Florida

_____

No. SC18-309
_____

**ARNOLD JEROME KNIGHT,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

December 19, 2019

PER CURIAM.

We review the decision of the First District Court of Appeal in *Knight v. State*, 267 So. 3d 38 (Fla. 1st DCA 2018), which affirmed Knight's conviction for attempted second-degree murder with a weapon where the jury was given an erroneous jury instruction on the lesser included offense of attempted voluntary manslaughter with a weapon.[1]  For the reasons that follow, we approve the result of the First District's decision but not its reasoning.

## I. BACKGROUND

The First District set forth the pertinent facts as follows:

---
1.  We have jurisdiction.  *See* art. V, § 3(b)(4), Fla. Const.

[Knight] challenges his conviction and thirty-year sentence for attempted second-degree murder of his former girlfriend. The evidence supported the conclusion that he used a heavy, metal hydraulic jack handle to beat the victim very severely in her face and head, breaking the arm she used to try to block the attack, and breaking one of her eye sockets, in addition to inflicting other serious injuries to her face and head, including a gash down to her skull, leaving her with permanent residual impairments. The emergency medicine physician who treated the victim testified that the injuries required a direct blow of great force.

The victim testified that [Knight] had lived with her and her two young-adult children for a short time and had previously threatened to kill her if she ever tried to leave him. After [Knight] moved out of the victim's house at the request of the victim and her son, the victim obtained an injunction for protection against domestic violence against [Knight]. Nine hours after he was served with that injunction, at a time when he was aware from having lived with the victim that she would be leaving her house alone to prepare to leave in her car, [Knight] was waiting for her and attacked her. The victim saw him begin beating her with the weapon, although the severity of the beating prevented her from remembering the remainder of the attack. The victim's son heard her call out, and was an eyewitness to part of the attack. He saw [Knight] with the weapon in his hand and confronted him. The victim's daughter saw [Knight] walking away from the attack carrying an object matching the description of the weapon.

The weapon was found a short distance away, between the victim's house and the place where law enforcement found [Knight]. The weapon was found to have the victim's DNA on both ends and [Knight]'s DNA on one end. Although the weapon was the handle to a hydraulic jack, no such jack was found anywhere near the victim's house or surrounding area, supporting the conclusion that [Knight] had brought it with him. The presence of the weapon, together with the evidence of [Knight]'s having been served with the domestic violence injunction just hours earlier, his timed arrival at the victim's house, and his lying in wait for her, also supported the conclusion that [Knight] had planned the attack in advance.

[Knight] did not testify at his trial, but neither the fact of the attack nor [Knight]'s identity as the attacker was disputed. There was

evidence that upon being informed of the charges including use of a crowbar as a weapon, [Knight] spontaneously denied having used a weapon; but there was no evidence explaining how the victim's serious injuries including a deep gash down to her skull could have been inflicted with bare hands. Defense counsel argued to the jury that the attack was not premeditated, [Knight] had no intent to kill the victim, and the evidence was insufficient to establish that [Knight] had used the jack handle as his weapon for the attack.

The jury was instructed on the following offenses in the following order:
- attempted first-degree premeditated murder with a weapon (the charged offense);
- attempted first-degree premeditated murder;
- attempted second-degree murder with a weapon (the offense of conviction);
- attempted second-degree murder;
- attempted voluntary manslaughter with a weapon (the erroneous instruction);
- attempted voluntary manslaughter;
- aggravated battery with a deadly weapon or great bodily harm;
- felony battery with great bodily harm; and
- battery.

*Knight*, 267 So. 3d at 40-41. The instruction for attempted voluntary manslaughter that was provided to the jury included intent to kill language; however, less than one month before Knight's trial, this Court approved a standard jury instruction for attempted manslaughter by act that eliminated the intent to kill language. *See In re Standard Jury Instructions in Criminal Cases–Instruction 6.6*, 132 So. 3d 1124, 1125 (Fla. 2014).[2]

_____

2. The offense of attempted voluntary manslaughter was renamed attempted manslaughter by act in *In re Standard Jury Instructions in Criminal Cases— Instruction 6.6*, 132 So. 3d at 1126.

On appeal, the First District concluded that the erroneous jury instruction did not constitute fundamental error because this Court receded from the jury pardon doctrine—which holds that the jury must be given a fair opportunity to exercise its inherent pardon or nullification power by returning a verdict of guilty as to the next lower crime—in *Dean v. State*, 230 So. 3d 420, 425 (Fla. 2017). *Knight*, 267 So. 3d at 42-44. This Court's decision in *Dean* generated four opinions. Justices Lewis, Canady, and Lawson concurred with the per curiam opinion. Justice Polston concurred with an opinion in which Justices Canady and Lawson concurred. Justice Quince concurred in result only with an opinion. Justice Pariente concurred in part and dissented in part with an opinion, and Chief Justice Labarga was recused.

The First District also held that, even if this Court has not abrogated the jury pardon doctrine, the defendant waived what otherwise would have been fundamental error in giving the erroneous jury instruction. *Knight*, 267 So. 3d at 44-45. At trial, the trial judge gave the prosecutor and defense counsel overnight to review the proposed jury instructions. Upon return the next morning, defense counsel indicated that he generally had no objection to the jury instructions. Specifically he stated, "No objection, Judge. I did read through these last night and I didn't really have a problem with any of the instructions." The record reflects defense counsel's further participation in discussions and drafting instructions.

- 4 -

The discussion of the attempted voluntary manslaughter with a weapon instruction at issue in this case was a brief discussion in the context of the definition of a weapon. There was no discussion regarding the improper "intent to kill" language. Defense counsel neither requested this instruction nor objected to the instructions as given. In deciding whether Knight waived his claim, the First District considered the totality of the circumstances, including

> the legal anomaly that results when counsel's failure to object to a fundamentally erroneous jury instruction has the legal effect of benefiting the defendant; the fact that this jury instruction had been declared erroneous and replaced with a valid instruction . . . before this trial; and the fact that experienced counsel represented to the court that he had read and had no objections to the jury instructions, and was actively involved in reviewing and revising the jury instructions as a whole.

*Id.* The First District concluded that Knight's "counsel waived the fundamental error in the improper jury instruction for manslaughter." *Id.* at 49.

## II. ANALYSIS

Knight argues that the trial court committed fundamental error and that he is entitled to relief from his conviction of attempted second-degree murder with a weapon, even though the evidence supports the elements of the conviction, because the jury instruction on the lesser included offense of attempted voluntary manslaughter with a weapon erroneously included the element of intent to kill. Knight further argues that the First District erred in holding that this Court's decision in *Dean* abrogated the jury pardon doctrine and that the Fourth District's

- 5 -

decision in *Caruthers v. State*, 232 So. 3d 441 (Fla. 4th DCA 2017), correctly concluded that this Court's decision in *Dean* did not abrogate the jury pardon doctrine. This issue presents a pure question of law; therefore, the standard of review is de novo. *See Kirton v. Fields*, 997 So. 2d 349, 352 (Fla. 2008).

We need not resolve the question whether a majority of the Court abrogated the jury pardon doctrine in *Dean*, because we now reconsider the jury pardon doctrine and more closely align ourselves with the majority of jurisdictions that do not recognize what is most accurately described as a fundamental right to instructions that facilitate partial jury nullification. Specifically, we recede from precedent and conclude that fundamental error did not occur because there was no error in the jury instruction on the offense of conviction, the evidence supports that offense, and the defendant's constitutional rights were not violated even if he was deprived of an opportunity for partial jury nullification. Accordingly, we agree with the result of the First District's decision. In light of our decision on this issue, we need not and do not address the First District's alternative holding on waiver.

**The Standard for Establishing Fundamental Error**

Jury instruction errors are subject to the contemporaneous objection rule. *See State v. Weaver*, 957 So. 2d 586, 588 (Fla. 2007); *State v. Delva*, 575 So. 2d 643, 644 (Fla. 1991). In the absence of a contemporaneous objection at trial, a jury instruction error is only subject to relief in the event of fundamental error. *See*

*Weaver*, 957 So. 2d at 588.  Here there was no contemporaneous objection to the disputed jury instruction.

This Court set out the test for determining fundamental error in *Brown v. State*, 124 So. 2d 481 (Fla. 1960).  We held that, to overcome the timely objection rule and be deemed fundamental, "the error must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error."  *Id.* at 484.  We indicated that, to establish fundamental error, it would have to be shown that "the error of the trial judge necessarily and inescapably produced the ultimate jury verdict" and that the error "permeate[d] or saturate[d] the trial" with "basic invalidity."  *Id.*

Properly understood, the fundamental error test for jury instructions cannot be met where, as in this case, there was no error in the jury instruction for the offense of conviction and there is no claim that the evidence at trial was insufficient to support that conviction.  In such circumstances, one cannot plausibly claim that the conviction "could not have been obtained" without the erroneous lesser included offense instruction or that the error vitiated the basic validity of the trial.

**Florida's Jury Pardon Doctrine**

In the cases on which Knight relies, we erred in our fundamental error analysis. Most importantly, we erred by transforming the unreviewable pardon *power* of the jury into a fundamental *right* of the defendant. And we further erred by treating the deprivation of the defendant's nonexistent right to the availability of a jury pardon as a structural defect that vitiates the fairness of the trial. We thus recede from our precedents to the extent they found fundamental error based on an erroneous jury instruction for a lesser included offense one step removed from the offense of conviction.

In *State v. Montgomery*, 39 So. 3d 252, 259 (Fla. 2010), this Court reversed a second-degree murder conviction because the standard jury instruction on manslaughter by act erroneously included the element of intent to kill. This Court held that "[b]ecause Montgomery's conviction for second-degree murder was only one step removed from the necessarily lesser included offense of manslaughter . . . fundamental error occurred in his case which was per se reversible where the manslaughter instruction erroneously imposed upon the jury a requirement to find" intent to kill. *Id.* Further, in *Williams v. State*, 123 So. 3d 23, 29 (Fla. 2013), which involved an erroneous attempted manslaughter by act instruction, this Court stated that "the defendant is entitled to an accurate instruction on the charged offenses and all lesser included offenses, and when the defendant is convicted of a

crime not more than one step removed from the crime for which an erroneous instruction is given, fundamental error occurs if the instruction pertains to a disputed element of the crime."

The result of this precedent is only reached through the jury pardon doctrine, i.e., "the jury's inherent power to pardon a defendant by convicting the defendant of a lesser offense." *Sanders v. State*, 946 So. 2d 953, 957 (Fla. 2006); *see, e.g.*, *Haygood v. State*, 109 So. 3d 735, 746 (Fla. 2013) (Canady, J., dissenting) ("This result is reached because under Florida law—as articulated by this Court in the jury pardon doctrine—defendants have a fundamental right for the jury to be correctly instructed on one-step-removed necessarily lesser included offenses."); *Dean*, 230 So. 3d at 425 (Polston, J., concurring) (same). However, as this Court recognized in *Sanders*, a jury pardon "remains a device without legal foundation" and is "essentially 'a not guilty verdict rendered contrary to the law and evidence' and is an aberration." 946 So. 2d at 958 (quoting *Willis v. State*, 840 So. 2d 1135, 1138 (Fla. 4th DCA 2003) (Klein, J., concurring specially)).

As Justice Canady fully explained in his dissent in *Haygood*, 109 So. 3d at 746, Florida's jury pardon doctrine "is at odds with both federal law and the law of the vast majority of the states" and "is corrosive of the rule of law." Significantly for purposes of this case, Justice Canady demonstrated that this Court's application

of the jury pardon doctrine has been "inconsistent with our general standard for determining fundamental error in jury instructions":

> In any case where the evidence supports the jury's verdict of guilt on the charged offense and no error was made in the instructions regarding that offense, it is hard to fathom how an error in an instruction regarding a lesser included offense would properly be considered an error without which "a verdict of guilt could not have been obtained." But the departure from our general doctrine of fundamental error is magnified where . . . an error in an instruction regarding a lesser included offense is declared fundamental even though there is no evidentiary basis for an instruction on that offense. The "validity of the trial itself" is said to be vitiated because the jury was not correctly instructed on an inapplicable lesser offense [in order to be] fully afforded the opportunity to act in an irrational and lawless manner. This is a far cry from the cases in which we have held that fundamental error occurred because a defendant was convicted of an offense and the jury was not properly instructed concerning the elements of that offense. *See Gerds v. State*, 64 So. 2d 915, 916 (Fla. 1953); *Reed v. State*, 837 So. 2d 366, 369 (Fla. 2002).
>
> Contrary to the logic of the jury pardon doctrine, interference with an opportunity for the jury to carry out a partial jury nullification does not undermine the validity of the trial. No defendant has the right to a trial in which the judge facilitates the jury's acting in disregard of the law.

*Haygood*, 109 So. 3d at 749 (Canady, J., dissenting).

Knight attempts to get around these problems with the jury pardon doctrine by arguing that his conviction should be reversed based on the test, originating in *Stewart v. State*, 420 So. 2d 862 (Fla. 1982), that "fundamental error occurs only when the omission is pertinent or material to what the jury must consider in order to convict." *Id*. at 863. According to Knight, because the mens rea requirements for second-degree murder and manslaughter are different, and because the jury in

- 10 -

his case needed to consider mens rea, the erroneous jury instruction was pertinent or material to the jury's decision in his case. Our fundamental error analysis in *Haygood* and *Griffin v. State*, 160 So. 3d 63 (Fla. 2015), which relied in part on the *Stewart* test, lends some support to Knight's argument.

Knight's argument—together with this Court's analysis in *Haygood* and *Griffin*—takes our analysis in *Stewart* out of context. *Stewart* involved an error in the jury instruction on an element of the offense of conviction. We held in *Stewart* that *even in that context* there is no fundamental error if the element was not disputed at trial. As we implicitly recognized in *State v. Delva*, 575 So. 2d 643 (Fla. 1991), *Stewart* did nothing more than apply the *Brown* test for fundamental error:

> To justify not imposing the contemporaneous objection rule, "the error must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." *Brown*, 124 So. 2d at 484. In other words, "fundamental error occurs only when the omission is pertinent or material to what the jury must consider in order to convict." *Stewart v. State*, 420 So. 2d 862, 863 (Fla. 1982). Failing to instruct on an element of the crime over which the record reflects there was no dispute is not fundamental error and there must be an objection to preserve the issue for appeal. *E.g.*, *Stewart* . . . ."

*Delva*, 575 So. 2d at 644-45; *see also Reed v. State*, 837 So. 2d 366 (Fla. 2002) (invoking *Brown* and *Stewart* test to find fundamental error involving an element of the offense of conviction).

- 11 -

Our decision in *Stewart* did not loosen or in any way expand the fundamental error test of *Brown*. *Stewart* simply applied *Brown* in a factual context where the trial court erred in instructing the jury on an element *of the offense of conviction* but there was no dispute as to that element at trial. The *Stewart* analysis upon which Knight relies has no bearing on cases, like this one, where the jury was properly instructed on the offense of conviction.

Based on the above, we recede from this Court's precedents relying on a right of access to a partial jury nullification as a basis for finding fundamental error in jury instructions. In doing so, we more closely align Florida with the federal courts and other jurisdictions[3] that do not recognize the jury pardon doctrine. We

---

3. *See*, *e.g.*, *Dinkins v. State*, 584 So. 2d 932, 934 (Ala. Crim. App. 1991); *Abdulbaqui v. State*, 728 P.2d 1211, 1214-15 (Alaska Ct. App. 1986); *State v. Murray*, 906 P.2d 542, 567 (Ariz. 1995); *State v. Jones*, 903 S.W.2d 170, 173 (Ark. 1995); *People v. Sisneros*, 738 P.2d 1196, 1197 (Colo. App. 1987); *State v. Huckabee*, 677 A.2d 452, 454 (Conn. App. Ct. 1996); *Mallory v. State*, 305 S.E.2d 656, 658-59 (Ga. Ct. App. 1983); *People v. Lopez*, 614 N.E.2d 329, 333 (Ill. App. Ct. 1993), aff'd, 655 N.E.2d 864 (Ill. 1995); *Little v. State*, 501 N.E.2d 447, 449-50 (Ind. 1986); *State v. Sutherland*, 804 P.2d 970, 974-75 (Kan. 1991); *Commonwealth v. Mack*, 667 N.E.2d 867, 868 (Mass. 1996); *State v. Steward*, 936 S.W.2d 592, 594 (Mo. Ct. App. 1996); *State v. Short*, 618 A.2d 316, 319 (N.J. 1993); *People v. Garcia*, 631 N.Y.S.2d 384, 385 (N.Y. App. Div. 1995); *State v. Barnes*, 479 S.E.2d 236, 239 (N.C. 1997); *State v. Larson*, 554 N.W.2d 655, 656 (N.D. 1996); *State v. Wilson*, 659 N.E.2d 292, 306 (Ohio 1996); *Al-Mosawi v. State*, 929 P.2d 270, 283 (Okla. Crim. App. 1996); *Commonwealth v. Thomas*, 546 A.2d 116, 118 (Pa. Super. Ct. 1988); *State v. Froais*, 653 A.2d 735, 737-38 (R.I. 1995); *State v. Byrd*, 474 S.E.2d 430, 433 (S.C. 1996); *Lavarry v. State*, 936 S.W.2d 690, 693-94 (Tex. App. 1996); *State v. Speece*, 798 P.2d 294, 295 (Wash. 1990); *State v. Glenn*, 545 N.W.2d 230, 234 (Wis. 1996); *Warren v. State*, 835 P.2d 304, 311 (Wyo. 1992).

make this decision mindful of the importance of *stare decisis* in most cases. While the doctrine of *stare decisis* is "strong," it is "not unwavering." *Brown v. Nagelhout*, 84 So. 3d 304, 309 (Fla. 2012). This Court in the past has receded from precedents that it deemed clearly erroneous. *See*, *e.g.*, *Shepard v. State*, 259 So. 3d 701, 707 (Fla. 2018). Importantly, our decision today does not undermine valid reliance interests. As the Supreme Court has observed, the role of *stare decisis* is reduced in the case of procedural rules, such as the ones at issue here, that do not "serve as a guide to lawful behavior." *United States v. Gaudin*, 515 U.S. 506, 521 (1995).

We note that, in *State v. Wimberly*, 498 So. 2d 929 (Fla. 1986), we relied on "the jury's right to exercise its 'pardon power' " as part of the rationale for our interpretation of Florida Rule of Criminal Procedure 3.510(b) and our holding that, under that rule, "[t]he trial judge has no discretion in whether to instruct the jury on a necessarily lesser included offense." *Id*. at 932. To be clear, in our decision today we do not recede from *Wimberly*.

In the present case, because Knight failed to comply with the contemporaneous objection rule and because there was no fundamental error, we affirm the result of the First District's decision affirming Knight's conviction.

## III. CONCLUSION

We hereby recede from this Court's precedent where a finding of fundamental error was predicated on Florida's jury pardon doctrine. We also reaffirm the fundamental error rule of *Brown v. State*, 124 So. 2d 481 (Fla. 1960), and recede from this Court's precedent applying the fundamental error analysis of *Stewart v. State*, 420 So. 2d 862 (Fla. 1982), outside the context of erroneous jury instructions on the offense of conviction.

In this case, we conclude that the trial court's unobjected-to, erroneous jury instruction on the lesser included offense of attempted voluntary manslaughter with a weapon did not constitute fundamental error. Accordingly, we approve the result of the First District's decision affirming Knight's conviction.

It is so ordered.

CANADY, C.J., and LAWSON and MUÑIZ, JJ., concur.
POLSTON, J., concurs specially with an opinion.
LABARGA, J., dissents with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

POLSTON, J., specially concurring.

For the reasons expressed in my concurrence in *Dean v. State*, 230 So. 3d 420 (Fla. 2017), I would approve the result of the First District's decision affirming Knight's conviction. To be clear though, I agree with the majority that there was no fundamental error in this case. I further agree with receding from this Court's

- 14 -

decisions regarding a supposed right to a partial jury nullification, which has also been referred to as the jury pardon doctrine.

LABARGA, J., dissenting.

For decades, Florida's trial courts have been required to instruct juries on necessarily lesser included offenses. Moreover, this Court has repeatedly reaffirmed the importance of providing juries with correct instructions on necessarily lesser included offenses that are one step removed from the offense of conviction. *See State v. Montgomery*, 39 So. 3d 252, 259 (Fla. 2010); *Pena v. State*, 901 So. 2d 781, 787 (Fla. 2005); *State v. Abreau*, 363 So. 2d 1063, 1064 (Fla. 1978). However, today's majority opinion upends longstanding precedent and concludes that the use of an erroneous jury instruction on a necessarily lesser included offense, one step removed from the offense of conviction, did not constitute fundamental error because the evidence presented at trial supported the conviction. The majority opinion does so even though the offense of conviction was one step removed from an instruction that erroneously required a finding of intent to cause the death of the victim, and the defendant's intent was the key issue in dispute.

In this Court's unanimous decision in *Montgomery*, we explained that "[a]t trial, the jury *must* be instructed on category one lesser included offenses." 39 So. 3d at 259 (emphasis added). A category one or " 'necessarily lesser included

- 15 -

offense' is, as the name implies, a lesser offense that is always included in the major offense. The trial judge has no discretion in whether to instruct the jury on a necessarily lesser included offense. Once the judge determines that the offense is a necessarily lesser included offense, an instruction must be given." *State v. Wimberly*, 498 So. 2d 929, 932 (Fla. 1986).

A charged offense and any necessarily lesser included offenses are distinguished from one another by their elements, and incorrect jury instructions can significantly impair the jury's ability to distinguish one offense from another. In this case, the trial court properly determined that attempted voluntary manslaughter with a weapon was a necessarily lesser included offense of attempted first-degree premeditated murder with a weapon. However, the incorrect instruction on attempted voluntary manslaughter with a weapon required a finding that Knight intended to cause the death of the victim. Knight was entitled to a correct instruction on this lesser included offense, and the failure to properly instruct the jury resulted in fundamental error.

For fundamental error purposes, the proper analysis must look to the erroneous jury instruction and evaluate its impact on the verdict. Instead, the majority opinion focuses on whether the evidence supported a conviction for attempted second-degree murder with a weapon and concludes that Knight's

entitlement to a correct attempted manslaughter instruction amounts to "an opportunity for partial jury nullification." Majority op. at 6.

This case clearly falls within the scope of our decision in *Montgomery*, which recognizes that it is within the province of the jury to serve as the finder of fact, and pursuant to the instructions given by the court, to determine whether a charged or lesser included offense has been committed. *Montgomery* was not decided in a vacuum. Rather, *Montgomery* flows from and was decided in a manner consistent with more than four decades of precedent. In *Lomax v. State*, 345 So. 2d 719 (Fla. 1977), *disapproved in part on other grounds by Abreau*, 363 So. 2d at 1064, this Court emphasized the role of the jury in deciding for which offense a defendant should be convicted. In fact, *Lomax* rejected the argument "that the failure to give an instruction of an immediately lesser included offense may be harmless if there is overwhelming evidence that the appellant committed the greater crime and the jury could not reasonably have found that *only* the lesser crime was committed." *Id*. at 720 (quoting *Lomax v. State*, 322 So. 2d 650, 651 (Fla. 2d DCA 1975)). This Court concluded that the failure to instruct on a necessarily lesser included offense "invade[s] the province of the jury" and "successfully takes an important evidentiary matter from the proper province of the jury." 345 So. 2d at 721. In *Abreau*, decided the year after *Lomax*, this Court reaffirmed the per se rule governing the instruction on necessarily lesser included

offenses. Although the Court disapproved *Lomax*, it did so only to the extent that *Lomax* suggested that the "failure to instruct on *any* lesser included offense" was per se reversible error. *Abreau*, 363 So. 2d at 1064. *Abreau* clarified: "[T]he failure to instruct on the next immediate lesser-included offense (one step removed) constitutes error that is per se reversible." *Id.* Similarly, in the present case, the requirement of a finding of intent in the attempted voluntary manslaughter jury instruction is tantamount to a failure to instruct because the additional element of intent prevented the jury from considering the one step removed, necessarily lesser included offense, as correctly defined. Because I continue to conclude that *Abreau* correctly states the law, and thus, that fundamental error occurred in this case, I dissent from the majority's decision to "recede from precedent" in this area of the law. Majority op. at 6.

The proper fundamental error inquiry is, where Florida law required a jury instruction on the necessarily lesser included offense of attempted voluntary manslaughter with a weapon, could the jury have convicted Knight of that offense—one step removed from the offense of conviction—had it been properly instructed? If so, it cannot be said that Knight's conviction would have been obtained without the assistance of the erroneous jury instruction. *See Pena v. State*, 901 So. 2d at 787 ("If the jury is not properly instructed on the next lower crime, then it is impossible to determine whether, having been properly instructed,

- 18 -

it would have found the defendant guilty of the next lesser offense.").  Here, the attempted voluntary manslaughter instruction erroneously required a finding that Knight intended to cause the death of the victim and was not a mere scrivener's error.  Rather, the error went directly to what the jury had to consider in order to convict Knight: whether he intended to cause the death of the victim.  Defense counsel successfully argued the absence of intent, and the jury's verdict underscores that it unanimously rejected the State's argument that Knight intended to kill the victim.

I also disagree with the majority's use of the term "partial jury nullification," which suggests that the defendant receives some improper benefit, even where Florida law requires that the jury be instructed on necessarily lesser included offenses.  The jury's consideration of lesser included offenses does not work solely for the benefit of the defendant; it also helps ensure that where a defendant has committed a crime, but the State is unable to prove the charged offense, the defendant may yet be held accountable.

Respectfully, I dissent.

Application for Review of the Decision of the District Court of Appeal – Certified Great Public Importance/Certified Direct Conflict of Decisions

First District - Case No. 1D14-2382

(Okaloosa County)

Andy Thomas, Public Defender, and Glen P. Gifford, Assistant Public Defender, Second Judicial Circuit, Tallahassee, Florida,

     for Petitioner

Ashley Moody, Attorney General, and Trisha M. Pate, Bureau Chief, and Virginia Harris, Assistant Attorney General, Tallahassee, Florida,

     for Respondent

Rocco J. Carbone, III, of Law Offices of Rocco J. Carbone, III, St. Augustine, Florida,

     Amicus Curiae Florida Association of Criminal Defense Lawyers

Carol Stafford Haughwout, Public Defender, and Gary Lee Caldwell, Assistant Public Defender, Fifteenth Judicial Circuit, West Palm Beach, Florida,

     Amicus Curiae Florida Public Defender Association